**James T. CROSS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 74–1367.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 1, 1974.

Decided Feb. 7, 1975.

Martin S. Driggers, Sr., Hartsville, S. C. (Saleeby, Saleeby & Cox, Hartsville, S. C., on brief), for appellant.

Eloise E. Davies, Atty., U. S. Dept. of Justice (Carla A. Hills, Asst. Atty. Gen. of the United States, John K. Grisso, U. S. Atty., and Stephen F. Eilperin, Atty., U. S. Dept. of Justice, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER, CRAVEN, BUTZNER, RUSSELL, FIELD and WIDENER, Circuit Judges, sitting in banc.

WINTER, Circuit Judge:

■ We heard this appeal in banc to resolve the difference in views expressed by the panel in Welch v. United States, 464 F.2d 682 (4 Cir. 1972). The question in *Welch*, which plaintiff asks us to reconsider here, is whether under the Food Stamp Act of 1964, 7 U.S.C. § 2011 et seq., a district court, in affording a "trial de novo" to determine "the validity of the questioned administrative action in issue", 7 U.S.C. § 2022(c), may, in a proper case, reduce an administratively imposed sanction, even though it concludes that the Secretary of Agriculture, or his designate, properly found that the Act has been violated and imposed a sanction permitted by the statute and implementing regulations. In *Welch*, a majority of the court concluded that the district court lacked the power to go beyond the issue of the validity of the disqualification action and to modify the administrative sanction. Although Judge Butzner joined in the judgment because he thought that the administrative sanction was neither arbitrary nor capricious, he expressed the view that the scope of review by the district court extended to modification of the length of time a merchant is disqualified to participate in the food stamp program. In a subsequent unreported case, Shurkin v. United States, 473 F.2d 907 (4 Cir. 1973), the panel agreed that the administrative penalty which was imposed should be sustained, but, again, diverged as to the rationale of the result. Judges Craven and Butzner were of the view that the

Secretary should be sustained because his action in fixing the penalty was neither arbitrary nor capricious; but Judge Russell, while agreeing that the Secretary had not abused his discretion, adhered to the majority view in *Welch* that the district court was powerless to change the penalty period.

We conclude to adopt the minority view in *Welch*[1] and hold that the scope of judicial review extends to the period of administrative sanction, notwithstanding that the Secretary did not impose a penalty exceeding that permitted by the statute or the regulations. What was said to the contrary in the majority opinion in *Welch* is no longer to be deemed to be the law of this circuit, although, of course, the judgment in *Welch* is unaffected. In the instant case, the judgment of the district court that it lacked authority to review the penalty is vacated and the case is remanded for further consideration in the light of the views expressed herein.

### I.

Plaintiff, James T. Cross, together with his son, operates a rural South Carolina grocery store. Since 1968, he has been authorized to participate in the federal food stamp program. Two of the requirements of the program are that food stamps be accepted only for eligible food items, 7 C.F.R. § 272.2(b), and that no money be given in exchange for stamps in excess of 49 cents change in a food stamp transaction, 7 C.F.R. § 272.-2(e). On four occasions between 1968 and 1969 plaintiff was visited by program field officers, and twice he was warned that violations of either or both of these requirements could result in his disqualification from participation in the program.

Because of two admitted violations in 1969 and an apparently abnormally high volume of food stamp redemptions, Department of Agriculture agents made five investigatory shoppings of plaintiff's store in 1971. On each occasion a clerk accepted food stamps for ineligible items[2] and, on several, the clerk gave change in cash in excess of 49 cents in food stamp transactions. Plaintiff was advised of these violations and told that he could make an oral or written explanation to the Food and Nutrition Service (FNS), Florence, South Carolina. Plaintiff and his son responded promptly by writing to FNS, stating that the offending clerk had a problem of excessive drinking, which rendered him incapable of carrying out his instructions with regard to food stamp transactions, and that the clerk had been discharged since his drinking problem became apparent. Plaintiff added, "I do not think that we have violated any of the terms or provisions of the Food Stamp Program."

After receipt of plaintiff's response, the FNS officer in charge of the Florence office recommended that plaintiff be disqualified from participation in the stamp program for ninety days in order to make plaintiff and his son "aware of Program regulations and their obligation to assure that all persons employed in this store were aware of and adhering to the regulations." The Regional Office concurred in the proposed ninety-day disqualification, but the Acting Director of the Food Stamp Division in Washington increased the disqualification to a period of one year. He explained that the increase resulted from two factors: (1) that "the large number of major nongrocery items sold confirms that it is store policy . . . to sell major nongrocery items," and (2) that "sufficient compliance action had been taken before the investigation" and warnings given so that the case fell within the guidelines for a one-year disqualification which the Department of Agriculture set forth in written instructions for recommending and making final determinations.

Plaintiff's counsel sought and obtained review by the Food Stamp Review Officer, but he affirmed the propriety of a

---

1. *See also* Martin v. United States, 459 F.2d 300, 302–303 (6 Cir. 1972) (dissenting opinion).

2. These were nonfood items such as toothpicks and pantyhose, beer and dog food, snuff and light bulbs.

one-year disqualification. Cross then sought judicial review of the validity of the administrative action. Both in the district court and here, Cross did not dispute that his former clerk had violated the federal food stamp regulations, but plaintiff sought a *de novo* review of the period of disqualification. The district court characterized the sanction as "harsh," but, relying on the majority opinion in *Welch*, it declined to review the severity of the sanction and gave summary judgment enforcing it. The judgment has been stayed pending our review.

## II.

The scope of review in an action of this nature is governed by 7 U.S.C. § 2022, and this section grants "a trial de novo well beyond the scope of review available under the general provisions of the Administrative Procedure Act [5 U.S.C. § 706(2)(F)]." Peoples v. United States Dept. of Agriculture, 138 U.S. App.D.C. 291, 427 F.2d 561, 565 (1970). As the several opinions in *Welch* and Martin v. United States, 459 F.2d 300 (6 Cir. 1972), demonstrate, § 2022, on its face, may be read either to limit the trial *de novo* to the fact of violation of the Food Stamp Act and its concomitant regulations, or to extend it to review also of the sanction imposed for violation. Other considerations, such as legislative history [3] and application of the ordinary canons of statutory construction,[4] aside, we think that because of the method by which the fact of violation and the penalty are determined, due

process requires that § 2022 be construed to give the district court a measure of revisory power over the sanction if it determines that the fact of violation has been proved.

The Act vests in the Secretary the rule-making authority to devise a scheme of enforcement, 7 U.S.C. § 2013(c). The scheme provided for enforcement by the regulations permits an authorized retail food store to be disqualified from participation in the program for not more than three years if FNS finds that the retailer has failed to comply with the Act or the regulations. 7 C.F.R. § 272.6(a). Disqualification is decided on the basis of information gathered by FNS, except that the retailer is given notice of the charges against him and afforded the opportunity "to submit to FNS information, explanation, or evidence concerning any instances of noncompliance before a final determination is made." 7 C.F.R. § 272.6(b). Any such explanation "shall be reviewed and considered by the Director, Food Stamp Division, who shall then issue his determination," 7 C.F.R. § 272.6(c), but this consideration falls far short of the usual concept of a "hearing." There is no confrontation with accusers, no opportunity to cross-examine and to test credibility, and no determination by an impartial fact-finder.

Once the Director, Food Stamp Division, makes his determination—and that determination may include a recommendation of disqualification for a certain period—the retailer may have the determination reviewed by a Food Stamp Of-

---

**3.** The Senate Report accompanying the Food Stamp Act explained that § 2022 "provides for administrative and judicial review of the decision of the Secretary with respect to . . . the disqualification of [a retail or wholesale food concern participating in the program] . . .," 1964 U.S.Code, Cong. & Admin.News, p. 3291. While this statement hardly solves the problem before us, it provides no support for the argument that judicial review may not include reduction of the period of disqualification, where appropriate.

**4.** There are two key phrases in § 2022: "trial de novo" and "validity." The phrase "de novo" means "the court should make an inde-

pendent determination of the issues." United States v. First City National Bank of Houston, 386 U.S. 361, 368, 87 S.Ct. 1088, 1093, 18 L.Ed.2d 151 (1967), cited in Farmingdale Supermarket, Inc. v. United States, 336 F.Supp. 534 (D.N.J.1971), a § 2022 case. With this choice of words Congress authorized the reviewing court to engage in its own fact-finding, when, as is not the case in *Cross*, the agency's findings are disputed. Limitation on the court's review of the agency's sanction can only be derived from Congress's insertion of the word "validity" into its authorization of judicial review. In a sense, our opinion is an explanation of what we believe "validity" must be held to mean.

ficer. 7 C.F.R. §§ 273.3–273.5. If review is sought, the retailer has the right to file "written information in support of its position" and to appear in person, 7 C.F.R. § 273.7. The Food Stamp Review Officer may sustain the action under review, reverse it or modify it; he decides upon information submitted by the Director, Food Stamp Division, FNS, information submitted by the retailer in support of its position, and any additional relevant written information obtained by the Review Officer "from any other person." 7 C.F.R. § 273.8. Again, it will be seen that the usual attributes of a full "hearing" are not present. In short, as Judge Butzner, concurring in *Welch*, correctly stated: "The only hearing allowed by the Act is in the district court." 464 F.2d at 685.

■ We recognize that disqualification from participation in the food stamp program is not a criminal sanction. At the same time, that disqualification may have grave economic consequences to a retailer engaged in business in a depressed economic area where there is widespread use of food stamps. In such an area one who holds himself out as a retailer of food would be cut off from a substantial segment of the buying public if he is disqualified from engaging in food stamp transactions.

■ The opportunity to engage in *food stamp transactions as a retailer is*, of course, a privilege and not a right,[5] but, under current law, the dichotomy of treatment between privilege and right has been obliterated.[6] The constitutional guarantee of due process of law applies to both; and we think it applies here, because in a very real sense plaintiff will be deprived of "property" if he is disqualified from participation in the program for any period of time. Thus, we readily conclude that he may not be deprived of participation in the program, on the basis of his alleged wrongdoing, without being afforded procedural due process. Since, as we have shown, full procedural due process is not provided at the administrative levels where the fact and duration of disqualification are determined, we think that § 2022 must be read to afford it in the district court so as to preserve the regulatory scheme from constitutional attack.[7] Of course, in the instant case, plaintiff does not contest the fact of violation of the Act and the regulations, but this does not totally oust review. It is the sanction imposed, once a violation of the Act or regulations has been found, that constitutes the deprivation of property, not the mere fact of violation, and the Constitution requires that due process be afforded before that deprivation becomes effective. Moreover, the gravity of the offense and possible mitigating circumstances usually present questions of fact and, in the instant case, they have not yet been determined in a proceeding in which procedural due process has been afforded.

■ In concluding that the district court must afford review to the sanction of *disqualification where, as here, the* fact of violation is not contested, or where in other cases the district court finds *de novo* that a violation occurred, we add a word about the scope of judicial review. Due process on the issue of sanction requires that the punishment follow rationally from the facts,[8] be au-

---

5. *See, e. g.*, Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1971) ("[T]his Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.'")

6. The word more favored than "right" or "privilege" is "interest." See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

7. *See* Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932).

8. It is not true, however, that similar violations must result in uniform sanctions. "Mere unevenness in the application of the sanction does not render its application in a particular case 'unwarranted in law.'" Butz v. Glover Livestock Commission Co., 411 U.S. 182, 188, 93 S.Ct. 1455, 1459, 36 L.Ed.2d 142 (1973). On the other hand, excessive variance, something more striking than "mere unevenness," would be evidence of arbitrary or capricious action, because in that instance it may well be concluded that the Secretary failed to observe his own regulations and

thorized by the statute and regulations,[9] and aim toward fulfillment of the Act's purposes. The standard of review which is employed in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), the *Welch* concurrence, and the *Shurkin* majority, is that the court shall decide whether the administrative sanction is "arbitrary or capricious." Section 2022 itself requires the district court to review the sanction for "validity." As recently reiterated in Butz v. Glover Livestock Commission Co., 411 U.S.182,185–186, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973), "the Secretary's choice of sanction . . . [is] not to be overturned unless . . . it [is] 'unwarranted in law or . . . without justification in fact . . . .' "[10]

 We deem all three of these expressions synonymous and they define the due process which we hold must be afforded. To be "valid," a sanction must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact. Thus, the scope of review of a sanction is not as broad as the scope of review of the fact of violation. The more limited scope of review of a sanction results from the vesting of discretion by Congress in the Secretary to devise and administer a scheme of disqualifications (7 U.S.C. § 2020) for the effective and efficient administration of the food stamp program (7 U.S.C. § 2013(c) ).

The Secretary has done so, both in his formal regulations, 7 C.F.R. § 272.6(a), and in the instructions of his designate, the Deputy Administrator, FNS, contained in a memorandum dated March 13, 1970 to Regional and Field Offices, Food Stamp Division, setting forth successive periods of disqualification and defining what categories of violations warrant each period of sanction. Thus, the views of the Secretary as to the appropriate sanction in a given case of violation are entitled to very great, if not conclusive, weight.

 In the instant case, there may be room to question the validity of the sanction,[11] although we hasten to add that we express no view on what was a proper period of disqualification to impose on plaintiff. The district court characterized it as "harsh," but we do not conceive this to be a test. Rather, only in those instances in which it may be fairly said on the *de novo* record as a whole that the Secretary, acting through his designates, has abused his discretion by acting arbitrarily or capriciously, would the district court be warranted in exercising its authority to modify the penalty. Even in those instances in which a district court may find on *de novo* review that the Secretary erred in his determination of the fact and gravity of the violations, it would be incumbent on the district court to prescribe an alternate penalty, not on the basis of what

therefore the sanction was unwarranted in law.

**9.** An agency must follow its regulations as well as statutory mandates. *See* United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); United States v. Heffner, 420 F.2d 809 (4 Cir. 1969). Since the statute authorizes the Secretary to determine periods of disqualification for infractions of the Act or the regulations, 7 U.S.C. § 2020, attention must be paid both to the relevant regulation, 7 C.F.R. § 272.6(a), and the Deputy Administrator's memorandum, referred to in the text, which fleshes out the somewhat general provisions of the regulation.

**10.** It should be noted that the sanction in *Glover Livestock* was arrived at only after full procedural due process was afforded at the administrative level as provided in 9

C.F.R. §§ 202.5–202.22. In such a case, in contrast to that here, one would predict that a district court would be less likely to find that the Secretary had made an incorrect fact determination since the facts were found in an adversary proceeding.

**11.** As an example, the Deputy Administrator's memorandum states that a factor requiring a one-year period of disqualification is evidence that the retailer, "as a matter of store policy," is, *inter alia*, engaged in selling ineligible items for coupons, and apparently the Acting Director made that finding in the instant case. Notwithstanding plaintiff's admission that the violation occurred, it is possible that plaintiff's explanation of his difficulties with an alcoholic clerk might negate this factor and might indicate the propriety of a lesser sanction as specified in the memorandum.

it, in the exercise of its judgment, would consider reasonable and just, but within the guidelines set by the Secretary for the enforcement of the Act.

Since, in the instant case, the district court understandably thought that it lacked power to review the period of disqualification, we vacate its judgment and remand the case to permit the review to be afforded.

Vacated and remanded.

WIDENER, Circuit Judge (concurring):

Although I concur in vacating the judgment of the district court and in remanding the case, I would do so for different reasons and under different standards than those set forth in the opinion of the court. I concur in the result reached by the majority, rather than with either dissent, because I think it more nearly expresses the intent of Congress, although to me neither of the three opinions reflects the intent of Congress and restrict the extent of review which I think was not contemplated by the statute.

It is well settled that Congress may authorize review of administrative actions by the courts under such terms, and to such extent as it chooses, and even, absent a constitutional requirement, to deny review altogether. See Labor Board v. Cheney Lumber Co., 327 U.S. 385, 66 S.Ct. 553, 90 L.Ed. 739 (1946); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Further, there are the deeply imbedded principles that courts should decide constitutional questions only if necessary, and should construe statutes in a manner which requires decision of a serious constitutional question only if the statutory language leaves no reasonable alterna-

tive. United States v. Gambling Devices, 346 U.S. 441, 74 S.Ct. 190, 98 L.Ed. 179 (1953); United States v. Rumely, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770 (1953). I think the case at hand does not require us to reach the question of whether the opportunity to engage in food stamp transactions is an interest that is protected by the Constitution. I also note that the constitutional question is raised by the court rather than by the parties who simply ask that the statute be construed.

The Food Stamp Act provides for judicial review of an administrative disqualification of a store by the filing of a complaint in the district court. "The suit . . . shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue. If the court determines that such administrative action is invalid it shall enter such judgment or order as it determines is in accordance with the law and the evidence." 7 U.S.C. § 2022(c)

Since the "administrative action" must consist *both* of the finding of a violation and punishment of disqualification, I think the statute as it allows a review of the "validity of the administrative action," and provides that if the administrative action is invalid the court shall enter such judgment as "it determines" in accordance with the law and the evidence, may only be construed as granting a full right of review. The court's judgment is by statute to be based on its determination of both the law and the evidence, and I see no reason to read into this perfectly plain language a judicially imposed restriction.

As both the opinion of the majority and Judge Russell's dissent [1] acknowl-

---

1. I am unable to accept the thesis that a storekeeper ought not to be allowed to seek judicial review if he is only dissatisfied with the punishment rather than being dissatisfied both with the finding of guilt as to the violation and also the term of disqualification. Under this theory, a defendant in a civil case appealed for a trial *de novo* under a State law (see e. g. Va.Code of 1950 as amended, § 16.-1–113; Addison v. Salyer, 185 Va. 644, 40

S.E.2d 260, 263 (1946)), from a court not of record to a court of record, would not be allowed to admit liability on his appeal and have only the matter of damages contested and ascertained. Such a construction, to me, is untenable as it obviously would defeat the entire purpose of a *de novo* trial.

Neither would a defendant in a criminal case under the various State statutes so al-

edge, a trial *de novo* may only mean a broad right of review, the majority construing *de novo* to mean that the court "should make an independent determination of the issues", and the dissent that the court "would enjoy the same unfettered rights as the Secretary to impose a sanction according to its sense of justice and fairness." Yet both opinions, inexplicably to me, having acknowledged the broad meaning of the phrase, then proceed to restrict its application.

My views on the subject are in general agreement with the dissent of Judge Edwards in Martin v. United States, 459 F.2d 300, 302 (6th Cir. 1972), a case arising under the same statute at issue here, and are best articulated in the dissent of Mr. Justice Frankfurter in Stark v. Wickard, 321 U.S. 288, 312, 64 S.Ct. 559, 88 L.Ed. 733 (1944), a part of the reasoning of which has been quoted with approval by Mr. Justice Douglas in the opinion of the court in Data Processing Service v. Camp, 397 U.S. 150, 156, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Mr. Justice Frankfurter:

> "Apart from legislation touching the revenue, the public domain, national banks and patents, not until the Interstate Commerce Act of 1887, 49 U.S. C.A. § 1 et seq., did Congress begin to place economic enterprise under systems of administrative control. These regulatory schemes have varied in the range of control exercised by government; they have varied no less in the procedures by which the control was exercised. More particularly, these regimes of national authority over private enterprise reveal great diversity in the allotment of power by Congress as between courts and administrative agencies. Congress has not made uniform provisions in defining who may go to court, for what grievance, and under what circumstances, in seeking

relief from administrative determinations. Quite the contrary. In the successive enactments by which Congress has established administrative agencies as major instruments of regulation, there is the greatest contrariety in the extent to which, and the procedures by which, different measures of control afford judicial review of administrative action.

> Except in those rare instances, as in a claim of citizenship in deportation proceedings, when a judicial trial becomes a constitutional requirement because of 'The difference of security of judicial over administrative action,' Ng Fung Ho v. White, 259 U.S. 276, 285, 42 S.Ct. 492, 495, 66 L.Ed 938, whether judicial review is available at all and, if so, who may invoke it, under what circumstances, in what manner, and to what end, are questions that depend for their answer upon the particular enactment under which judicial review is claimed. Recognition of the claim turns on the provisions dealing with judicial review in a particular statute and on the setting of such provisions in that statute as part of a scheme for accomplishing the purposes expressed by that statute. Apart from the text and texture of a particular law in relation to which judicial review is sought 'judicial review' is a mischievous abstraction. There is no such thing as a common law of judicial review in the federal courts. The procedural provisions in more than a score of these regulatory measures prove that the manner in which Congress has distributed responsibility for the enforcement of its laws between courts and administrative agencies runs a gamut all the way from authorizing a judicial trial *de novo* of a claim determined by the administrative agency to denying all judicial review and making adminis-

lowing for trial *de novo* be allowed to plead guilty upon his appeal and only have his punishment reascertained. Cf. Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), in which the Supreme Court held that a trial *de novo* on appeal insulated the result from the application of North Carolina

v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). There, the Court referred to the Kentucky trial *de novo* procedure as an "unrestricted right to have a new trial". 407 U.S. 104, 117, 92 S.Ct. 1953, 1960, 32 L.Ed.2d 584.

trative action definitive." [2] 321 U.S. 288, 311, 64 S.Ct. 559, 572, 88 L.Ed. 733.

I would remand this case for a new trial by the district court in which it would make its own independent judgment as to the term of disqualification within the limits expressed in 7 CFR § 272.6 as authorized by 7 U.S.C. § 2020.[3]

FIELD, Circuit Judge (dissenting):

I adhere to the views expressed in my opinion in *Welch* and would note that the majority decision places this circuit at odds with every other federal court that has had occasion to consider this question. Martin v. United States, 459 F.2d 300 (6 Cir. 1972); Save More of Gary, Inc. v. United States, 442 F.2d 36 (7 Cir. 1971); Marcus v. United States Dept. of Agr., Food & Nut Serv., 364 F.Supp. 374 (E.D.Pa.1973); Eckstut v. Hardin, 363 F.Supp. 701 (E.D.Pa.1973); Miller v. United States Dept. of Agriculture, F. & N. Serv., 345 F.Supp. 1131 (W.D.Pa.1972); Great Atlantic & Pacific Tea Company v. United States, 342 F.Supp. 492 (S.D.N.Y.1972); Farmingdale Supermarket, Inc. v. United States, 336 F.Supp. 534 (D.N.J.1971); and Marbro Foods, Inc. v. United States, 293 F.Supp. 754 (N.D.Ill.1968).

DONALD RUSSELL, Circuit Judge (concurring in dissenting opinion of Judge FIELD):

I concur in Judge Field's dissent. I would add these further comments:

2. I especially note that the last part of the quoted language from *Stark* obviously refers to a trial *de novo* as the broadest kind of judicial review of administrative action: ". . . [A]ll the way from . . . judicial trial *de novo* . . . to denying all judicial review . . .." 321 U.S. 288, 312–313, 64 S.Ct. 559, 572, 88 L.Ed. 733.

3. Assuming the application of the Administrative Procedure Act to this review, the result would be the same, for 5 U.S.C. § 706(2)(F) provides in pertinent part that the scope of review is such that ". . . the reviewing court . . . shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."

A critical fact in this case—and one the majority opinion I fear notices too little—is that at no time has the plaintiff-retailer sought a true *de novo* trial as provided in § 2022, 7 U.S.C., *on the "validity" of the finding that he had violated the Food Stamp Act.* The District Court properly emphasized this point at the beginning of its opinion. It stated "[t]he complaint (filed by the retailer-plaintiff) does not ask for a trial *de novo.*" [1] And this is so because the plaintiff both in his presentation to the Secretary and in his complaint in the District Court conceded his violations of the Act.[2] So far as his actual offense, *i. e.,* the violations of the Act, the plaintiff was not denied a right to a *de novo* "hearing," with the accompanying rights of confrontation of his accusers and cross-examination of adverse witnesses, as given him under § 2022 in the District Court or under any due process claim in the administrative proceedings; he effectively waived such right by his admission of guilt.[3] There was accordingly no denial of procedural due process suffered by him in connection with the finding that the plaintiff had violated the Act, nor does the plaintiff claim any.

The claim of the plaintiff, as baldly stated in his complaint, relates exclusively to the sanction imposed by the Secretary by reason of his admitted violations. He charged that the "sanction levied * * * [was] unwarranted, overly harsh, and unprecedented" and he asks by way of relief only that the sanction

1. This is conceded by the plaintiff in his brief in this Court but sought to be excused with the statement:

 "* * * The Plaintiff-Appellant would interpret the Food Stamp Act to automatically grant a 'trial *de novo*' hearing before the court, without the necessity of a specific demand." Note 11, p. 12, Appellant's Brief.

2. The majority opinion recognizes this fact:

 "Of course, in the instant case, plaintiff does not contest the fact of violation of the Act and regulations * * *."

3. As to the meaning and extent of a *de novo* trial under § 2022, *see,* J. L. Saunders, Inc. v. United States (D.C.Va.1971) 52 F.R.D. 570, 572.

be "set aside * * * as being overly harsh, unreasonable, and unwarranted in the light of the minor infractions of the Food Stamp Program."

The sole issue posed by this cause was accordingly the scope of review available in District Court over the sanction imposed by the Secretary, not the fact of violation of the Act, and that was the issue properly addressed by the District Court.

Turning now to the issue of scope of judicial review of the sanction imposed, it will be noted that the majority opinion concedes that "§ 2022, on its face, may be read either to limit the trial *de novo* to the fact of violation of the Food Stamp Act and its concomitant regulations, or to extend it to review also of the sanction imposed for violation." It concludes, however, "that the scope of judicial review extends to the period of administrative sanction, notwithstanding that the Secretary did not impose a penalty exceeding that permitted by the statute or the regulations." It arrives at this conclusion, not on the fair construction of the language of § 2022 or on its legislative history, both of which it finds ambiguous, but on the premise that due process requires that § 2022 be construed to give the district court "a measure of revisory power over the sanction if it determines that the fact of violation has been proved."

The majority opinion reasons that, unless a "hearing" is accorded the retailer, who has admitted his violation, on the issue of the sanction to be imposed in the District Court, such individual will have been denied his due process right to a hearing where he may exercise his constitutional right of confrontation of accusers and of cross-examination of witnesses.[4] Even were this conceded, it is, however, of no moment here because under the facts in this case the plaintiff was not entitled to such a fact-finding hearing, where he might exercise the right of confrontation and cross-examination, either at the administrative or court level. Actually, the statutory scheme contemplated this result and for that reason provided that the retailer accused of a violation of the Act could secure his due process right to a hearing under § 2022—*unless he waived it.* And the plaintiff in this case waived it when he admitted his violation. His situation is no different from that of the criminal defendant who admits his offense and enters a plea of guilty; by his plea he has waived any right to an adjudicatory hearing or trial, with the right of confrontation and cross-examination. Due process gives the criminal defendant no right to a proceeding where he can have determined, after a full hearing, with cross-examination of witnesses, the "gravity" of his offense and possible mitigating circumstances. If the criminal defendant who pleads guilty has no right to an adjudicatory hearing or a full-dress hearing on the "gravity" of his offense, unquestionably a retailer who is subject only to civil penalties waives his right to such a hearing by his admission of guilt. And all this is so because there is a considerable difference, and one the majority opinion seems to overlook, between the determination of a violation of law and the imposition of a sentence or penalty after the fact of violation has been established. The former involves an "adjudicatory proceeding" where fact-finding procedures must be observed. It is to this stage of the proceeding that due process attaches the right to a "hearing" in the constitutional sense, with the rights of confrontation and cross-examination. Camp v. Pitts (1973) 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106. But, after the violation has been established through the fact-finding procedures afforded by a "hearing" or

---

4. In support of this, the majority opinion cites the much criticized case of Crowell v. Benson (1932) 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 which, "while", as one commentator has remarked, "never expressly overruled has not been followed (although its ghosts still haunt the books)," Parker, Administrative Law, 112 (1952), and which Justice Frankfurter in Estep v. United States (1946) 327 U.S. 114, 142, 66 S.Ct. 423, 90 L.Ed. 567 declared had "earned a deserved repose." *See, also,* Forkosch, Judicial De Novo Review of Administrative Quasi-Judicial Fact Determinations, 25 Hastings L. Journal 963, 972 (1974).

has been admitted, thereby waiving the right to such a hearing, the power of the court becomes discretionary, involving no fact-finding and requiring no "*de novo*" or constitutional "hearing", where there is confrontation with the accusers or cross-examination of the witnesses. *See* Brennan v. Occupational Safety and Health Review Com'n (8th Cir. 1973) 487 F.2d 438, 442–443, n. 17; Save More of Gary, Inc. v. United States (7th Cir. 1971) 442 F.2d 36, 39, cert. dismissed 404 U.S. 987, 92 S.Ct. 535, 30 L.Ed.2d 549.[5] The criminal defendant who has plead guilty is, it is true, generally given the right of "allocution", the right to make a plea in mitigation,[6] though the right is not "a constitutional right essential to fundamental fairness." United States v. Leavitt (1st Cir. 1973) 478 F.2d 1101, 1104. That certainly was the extent of the right of the plaintiff, after he had admitted his violation and waived any right to a *de novo* fact-finding "hearing" or trial on his guilt. The plaintiff was accorded that right. After advising him of the violations charged, the plaintiff was given by the Secretary the opportunity to offer any statement he wished in mitigation and the plaintiff exercised that right, as evidenced by his letter of June 23, 1971, in which he claimed that the violations were committed contrary to instructions by an alcoholic clerk to whom plaintiff had entrusted the operation of his store. There is accordingly no violation of constitutional rights in the procedure provided in § 2022 nor was there any in the procedural disposition administratively of plaintiff's case. The requirements of due process do not, therefore, compel any gloss upon § 2022 or mandate that the plaintiff be given a *de novo* hearing with rights of confrontation and cross-examination when the sole issue is the validity of the sanction imposed.

Actually, though, the majority opinion does not give the plaintiff a right to a *de novo* hearing or what might be described as a fact-finding adjudication. A *de novo* hearing would mean that the court would review the sanction "anew" and would enjoy the same unfettered rights as the Secretary to impose a sanction according to its sense of justice and fairness.[7] The majority opinion, on the contrary, states that the court has merely "a measure of revisory power over the sanction." And it proceeds to give meaning to this indefinite and ambiguous phrase, "a measure of revisory power, for which there is no provision in § 2022, by declaring that the scope of permissible judicial review authorized under this standard extends only to deciding "whether the administrative sanction is 'arbitrary or capricious'." There is no language in § 2022 to support that standard of review.[8] What the majority opinion is doing in fixing these limits for judicial review, is not putting some con-

**5.** In *Brennan*, the Court said:

"* * * The reviewing court [having the power to affirm, modify or set aside in whole or in part the agency's order] is thus bound to apply the substantial evidence test to the Commission's findings of fact [*that is, its finding of a violation of the Act*]. *The assessment of penalties is not a finding but the exercise of a discretionary grant of power.* And while the court has jurisdiction to review and power to modify, the test of a penalty within the statutory range must be whether the Commission abused its discretion." (Italics added).

In *Save More of Gary, supra* (442 F.2d at 39), the Court said:

"But implicit in the whole series of letters to the Food Stamp Review Officer, which were exhibits in the case, is an admission that the violations in fact did occur. There is a wealth of material offered in explanation and mitigation, but no clear denial of the violations. The District Court was thus left only with the disposition of legal issues."

**6.** See Rule 32(a), Federal Rules of Criminal Procedure, 18 U.S.C.

**7.** *See* Note 3.

**8.** The majority opinion, though it cites the dissenting opinion in Martin v. United States (6th Cir. 1972) 459 F.2d 300, 302–303, does not follow that dissent, which would have extended the *de novo* provision of § 2022 to the sanction imposed as well as to the fact of violation. Under the *Martin* dissent, judicial review of the sanction would, as we have seen, have been "anew," as if the Secretary had imposed no sanction, and the power of the court would have been an unfettered one to provide *its own concept of a just and proper sanction.* The rule announced in the majority opinion, on the other hand, would allow only for a review under the "arbitrary

stitutional gloss on § 2022; it is simply restating what has long been the accepted "narrow" rule for review of remedies or sanctions formulated by administrative agencies, a rule stated repeatedly in authoritative judicial opinions [9] and incorporated expressly in the Administrative Procedure Act itself,[10] and a rule that recognizes the manifest difference between the power of the court when reviewing the finding of a substantive violation and when reviewing an assessment of penalties or the imposition of sanctions.[11]

But when the majority opinion adopts this "abuse of discretion by acting arbitrary or capricious" standard, it is accepting a standard which has a well-defined meaning and definition in the law. The latest statement of this definition of what is meant by an "arbitrary and capricious" standard of judicial review, and one peculiarly appropriate here because it evolved in connection with the review of a sanction imposed by the Secretary of Agriculture, appears in *Butz v. Glover Livestock Com'n Co.* (1973) 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142. In that case, *Butz*, a stockyard operator, after a hearing, had been found guilty by the Secretary of Agriculture of a violation of the Packers and Stockyards Act and its registration under that Act had been suspended by the Secretary for twenty days. From this

administrative ruling, the petitioner had a right of appeal to the Circuit Court of Appeals, which, in turn, had jurisdiction to "affirm, set aside, or modify" the order of the Secretary. 7 U.S.C. § 194. On appeal, the Circuit Court, while sustaining the finding of a violation, voided the suspension because it was "unconscionable" under the circumstances of the case and contrary to the Secretary's practice of not imposing "suspensions for negligent or careless violations." In reversing that decision, the Supreme Court referred first to the well-established proposition that an administrative choice of sanction " 'is peculiarly a matter for administrative competence,' " [12] and then stated that sanctions administratively imposed are "to be overturned" on judicial review only if " 'unwarranted in law or * * * without justification in fact * * *.' " [13] The Court proceeded to approve a statement in the opinion of the Circuit Court that "so long as the remedy [or sanction] selected does not exceed the agency's statutory power to impose and it bears a reasonable relation to the practice sought to be eliminated, a reviewing court may not interfere * * *." [14] Specifically, it held that, "[T]he employment of a sanction within the authority of an administrative agency is thus not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases." [15]

and capricious" standard, which has recently been described as a "narrow one," [*See* Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc. (1974) 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 decided December 23, 1974.] and even then one which would be, as we indicate *infra*, subject to the guidelines issued by the Secretary. This is no *de novo* trial, as contemplated under § 2022 for an adjudication of the fact of violation.

**9.** *See*, Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., *supra*; NLRB v. Rutter-Rex Mfg. Co. (1969) 396 U.S. 258, 263, 90 S.Ct. 417, 24 L.Ed.2d 405 reh. denied 397 U.S. 929, 90 S.Ct. 895, 25 L.Ed.2d 109; Fed. Trade Com'n v. Ruberoid Co. (1952) 343 U.S. 470, 473, 72 S.Ct. 800, 96 L.Ed. 1081; United States v. Pierce Auto Lines (1946) 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821; Re Standard Gas & Electric Co. (3d Cir. 1945) 151 F.2d 326, 331, cert. denied Slattery v. McDonald, 326 U.S. 787, 66 S.Ct. 480, 90 L.Ed. 478.

**10.** 5 U.S.C. §§ 701–706.

**11.** This difference was pointed out in Marcus v. United States Depart. of Agr., Food & Nut. Serv. (D.C.Pa.1973) 364 F.Supp. 374, 375; Eckstut v. Hardin (D.C.Pa.1973) 363 F.Supp. 701, 703, and Miller v. United States Dept. of Agriculture, F. & N. Serv. (D.C.Pa.1972) 345 F.Supp. 1131, 1132. *See also*, Brennan v. Occupational Safety and Health Review Com'n, *supra* (487 F.2d at 442).

**12.** 411 U.S. 185, 93 S.Ct. 1458 (quoting from American Power Co. v. SEC (1946), 329 U.S. 90, 112, 67 S.Ct. 133, 91 L.Ed. 103).

**13.** 411 U.S. 185, 186, 93 S.Ct. 1458 (quoting from 329 U.S. at 112–113, 67 S.Ct. 133).

**14.** 411 U.S. at 186, n. 3, 93 S.Ct. at 1458.

**15.** 411 U.S. at 187, 93 S.Ct. at 1459.

The majority opinion, while conceding that *Butz* establishes that " '[M]ere unevenness in the application of the sanction does not render its application in a particular case "un-

And it concluded with the blunt statement, "[T]he fashioning of an appropriate and reasonable remedy is for the Secretary, not the court. The court may decide only whether under the pertinent statute and relevant facts, the Secretary made 'an allowable judgment in [his] choice of the remedy'" and to go beyond this will constitute "an impermissible intrusion into the administrative domain."[16]

*Butz* cites with approval G. H. Miller & Company v. United States (7th Cir. 1958) 260 F.2d 286, 296, cert. denied 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 (1959), which also involved the scope of judicial review over a sanction imposed by the Secretary of Agriculture. There, the petitioner was charged with a violation of the Commodity Exchange Act by the Secretary of Agriculture. It was found guilty of a violation and was suspended by the Secretary from trading for sixty days to one year. The petitioner appealed both the finding of violation and the sanction imposed. Under the Act the petitioner was entitled on appeal to "obtain a review of such order or such other equitable relief as to the court may seem just" and the appeal court had "jurisdiction to affirm, to set aside, or modify the order of the Secretary of Agriculture * * *". 7 U.S.C. § 9. After concluding that the finding of violation of the Act was valid, the Court refused to review the suspension imposed, saying:

"It is, therefore, clear to us that if the order of an administrative agency finding a violation of a statutory provision is valid and the penalty fixed for the violation is within the limits of the statute the agency has made *an allowable judgment in its choice of the remedy* and ordinarily the Court of Appeals has no right to change the penalty because the agency might have imposed a different penalty (Italics in opinion)." (260 F.2d at 296).[17]

---

warranted in law"'", proceeds to add that "excessive variance, something more striking than 'mere unevenness,' would be evidence of arbitrary or capricious action." It is submitted that *Butz* does not allow for this gloss on its ruling. The claim in that case was that never had the Secretary imposed a sanction for merely a negligent or inadvertent violation, only for an "intentional and flagrant" violation. The claim of the petitioner set forth what must be considered under his contention an "excessive variance" in the sanction imposed, as compared with the Secretary's uniform prior practice; and it was that claim of "excessive variance" that the Supreme Court dismissed. Moreover, how is a court to determine "excessive variance" in the sanctions imposed by the Secretary? Is there to be a hearing at which his various actions, in which he has imposed sanctions, are to be collated and compared? And if they are to be intelligently compared, how can it be done without analyzing the facts in each case so as to be sure a fair comparison of similar violations is being made? I am quite sure these practical problems represent a powerful influence in the Court's decision in *Butz* that variance in sanctions, whatever its extent so long as it was within the statutory limits, is not a ground for voiding a sanction imposed by the Secretary.

**16.** 411 U.S. at 188, 189, 93 S.Ct. at 1459.

*Butz* has become the accepted authority on the proper standard to be applied in the judicial review of administratively imposed sanctions. *See*, Miller v. Butz (5th Cir. 1974) 498 F.2d 1088, 1089; American Fed. of State, Cty. and M. Emp. v. City of Cleveland (6th Cir. 1973) 484 F.2d 339, 348; First National Bank of Chicago v. Richardson (7th Cir. 1973) 484 F.2d 1369, 1381; Brennan v. Occupational Safety and Health Review Com'n (8th Cir. 1973) 487 F.2d 438, 442, n. 17; Marcus v. United States Dept. of Agr., Food & Nut. Serv. (D.C.Pa.1973) 364 F.Supp. 374, 375; Eckstut v. Hardin (D.C.Pa.1973) 363 F.Supp. 701, 703. In American Fed., *supra*, 484 F.2d at 348, the Court said:

"In American Power & Light Co. v. SEC, 329 U. S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946), it was held that the determination of the proper remedy is 'peculiarly a matter for administrative competence' where the choice of means of achieving a statutory policy is given to an administrative body. Id., at 112, 67 S.Ct. at 146. The only determination required of a reviewing court where the choice of remedy is entrusted to an administrator is whether, under the pertinent statute and relevant facts, 'an allowable judgment' has been made in the choice of the remedy. Butz v. Glover Livestock Commission Co., 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973)."

**17.** *See, also,* Fairbank v. Hardin (9th Cir. 1970) 429 F.2d 264, 269, cert. denied 400 U.S. 943, 91 S.Ct. 244, 27 L.Ed.2d 247; Eastern Produce Co. v. Benson (3d Cir. 1960) 278 F.2d 606, 610. In *Fairbank*, the Court said:

The majority opinion recognizes and accepts the definition of "arbitrary and capricious" as declared in *Butz*, which fixes the limits of judicial review in this case. It states that "a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact." It is when the majority opinion proceeds to apply this standard to find the sanction herein invalid that it, in my opinion, falls into error. Contrary to the view of the majority, I think it abundantly clear that the sanction imposed in this case met fully and completely the *Butz* test and that the District Court was correct in dismissing the proceeding to review.

If the rule is that a remedy determined by the administrative agency is only to be voided on judicial review under the "arbitrary and capricious rule," provided it is "unwarranted in law or without justification in fact" or provided it is not "an allowable judgment in choice of the remedy" or provided it "exceed[s] the agency's statutory power to impose and it bears [no] reasonable relation to the practice sought to be eliminated," then there is, by the conclusions of the majority opinion itself, no basis or warrant for invalidating the Secretary's sanction or for reversing the action of the District Court in dismissing the proceeding. The majority opinion states "that the Secretary did not impose a penalty exceeding that permitted by the statute or regulations." That is tantamount, I submit, to declaring that the sanction imposed was "an allowable judgment in choice of the remedy" and under those circumstances, any attempt by the court to invalidate such a sanction would be "an impermissible intrusion into the administrative domain".[18] But if we go beyond this and look at the record as prepared and submitted by the parties there can be no basis for remanding this proceeding or voiding the sanction imposed. The record shows that the

plaintiff had been involved in violations of the Act on two occasions prior to those that prompted this proceeding. In both instances he was warned; the regulations were reviewed with him. In at least one of the instances ineligible items had been exchanged for food coupons. The plaintiff offered as an excuse in one case that a clerk had acted against instructions. In connection with that violation the plaintiff was cautioned about his responsibility for his clerks. On the occasions when the five purchases were made that gave rise to the disqualification, the plaintiff again sought to excuse his offenses by claiming that they were the fault of a clerk who was an alcoholic.[19] These five purchases, however, were spread over three days. There is no claim that the clerk was under the influence on any one of the days. The ineligible items sold for food stamps were items easily identifiable as ineligible: wine, beer, cigarettes, snuff, razor blades, shaving cream, shoes, toothpicks, panty hose. In fact, every purchase made included ineligible items and almost half of the items purchased were ineligible items. Cash in varying amounts was given in change in the case of four of the purchases. On the basis of this record the Secretary concluded that the plaintiff "as a matter of store policy" was engaged in selling ineligible items for coupons. The majority opinion states that "there may be room to question the validity of the sanction" and adds in a footnote by way of explanation that "it is possible that plaintiff's explanation of his difficulties with an alcoholic clerk might negate this factor and might indicate the propriety of a lesser sanction as specified in the memorandum." It will be noted that the majority opinion does not say that the conclusion reached by the Secretary was not a legitimate inference to be drawn from the undisputed record; it merely states

---

"* * * The administrative decision as to the remedy should be sustained unless the remedy selected has no reasonable relation to the unlawful practices found to exist" (429 F.2d at 269).

18. *See, Butz, supra* (411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142).

19. If a plea that the violation was the fault of a clerk could exculpate a retailer, there would be few instances where the Act would be enforced. The retailer must accept responsibility for the actions of his clerks, if the Act is to be made effective at all.

that "it is possible" to take another view and to regard the plaintiff's violations more leniently. The difficulty with this reasoning, however, is that it is for the Secretary, not the court to make the choice among the possible inferences to be deduced from the plaintiff's conduct. *See* Fairbank v. Hardin, *supra* (429 F.2d at 269); Hyatt v. United States (10th Cir. 1960) 276 F.2d 308, 312. "The court is not empowered [under the authority to review for 'arbitrary and capricious' judgment] to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe (1971) 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136. When the violation as admitted authorizes a disqualification that is "allowable" under both the Act and the administrative regulations (including guidelines, for sake of argument), and the Secretary has imposed that disqualification (which is this case since "the Secretary did not impose a penalty exceeding that permitted by the statute or regulations"), a Court has no right to inquire into "the * * * gravity of the violations" so as "to substitute its judgment for that of the agency." After all, whether a violation of the Act is to be excused or not is for the Secretary and not the Courts.

In my opinion, the majority opinion errs, too, in concluding that, if the Secretary has committed error, it is "incumbent on the district court to prescribe an alternate penalty." That is a power the Court, in reviewing a sanction under the "arbitrary and capricious" standard, may not exercise. If, in its judgment, the Secretary has violated the law or gone against his own regulations in the sanction he imposed, the remedy is to remand to the Secretary for further consideration. Should, however, the Court find there is no justification in fact for a sanction (*i. e.*, there has been no violation), then the Court should vacate the proceedings *in toto.*[20] But the District Court has no right to make its own determination, even if that determination is to be made under the Secretary's

guidelines. *See*, Gulf States Utilities Co. v. FPC (1973) 411 U.S. 747, 763–764, 93 S.Ct. 1870, 36 L.Ed.2d 635; SEC v. Chenery Corp. (1943) 318 U.S. 80, 95, 63 S.Ct. 454, 87 L.Ed. 626; Friendly, Chenery Revisited: Reflections on Reversal and Remand of Administrative Order, 1969 Duke L.Journal 199.

Finally, it should be noted that this decision will give violators of the Act in this Circuit a right of judicial review of sanctions imposed by the Secretary under the Act not enjoyed by violators in any other Circuit where the issue has been considered. Moreover, if the majority opinion's application of the phrase "arbitrary and capricious" is upheld, it opens wide all administratively formulated remedies to judicial review.

I think the District Court was correct in its holding. The sanction imposed by the Secretary was not "unwarranted in law" or "without justification in fact". I accordingly join in the dissent of my Brother Field.

---

**20.** This, of course, could arise only if the retailer contested the violation and demanded a *de novo* trial on that issue under § 2022.