Odell C. TANT, t/a Super Duper Food
Store, Appellant,

v.

UNITED STATES of America, Appellee.

No. 81–1053.

United States Court of Appeals,
Fourth Circuit.

Argued July 14, 1981.

Decided Aug. 17, 1981.

Thomas J. Farris, Raleigh, N.C. (Robert A. Farris, Jr., Wilson, N.C., on brief), for appellant.

Abraham Penn Jones, Asst. U.S. Atty., Raleigh, N.C. (James L. Blackburn, U.S. Atty., Raleigh, N.C., on brief), for appellee.

Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.

PER CURIAM:

Mr. Odell C. Tant sought judicial review pursuant to 7 U.S.C. § 2022 of a final administrative decision of the Food and Nutrition Service (FNS) of the United States Department of Agriculture suspending for sixty days his right to redeem food stamps at his grocery store. After a *de novo* trial, the Magistrate found that the sixty-day disqualification was not arbitrary and capricious or without justification in fact, and declined to modify the penalty. Mr. Tant appeals the dismissal of his suit, claiming that the FNS has violated its own guidelines and regulations and has improperly considered the high volume of food stamp redemption in setting the penalty.

Mr. Tant owns and operates the Super Duper Food Store in a predominantly black, low-income section of Wilson, North Carolina. From 1970 to 1977, although no violations were ever found, agents of the FNS made seven "educational" visits and six "compliance" visits to his store. On three occasions confirming letters were sent by FNS to Mr. Tant outlining areas of concern. Nonetheless, during the entire period, the store was neither charged with a violation of the food stamp program nor placed un-

der formal investigation. FNS agents reported that the store's high redemption rate was due to the store's location in a low-income area and to Mr. Tant's sales and advertising techniques. Mr. Tant and his assistant were found to have a good understanding of food stamp regulations.

On March 22, 23, and 24, 1977, FNS conducted a formal investigation of the Super Duper Food Store. Two FNS agents made six attempts to purchase ineligible items with food stamps. On four of the six attempts they were successful. Sixty-three percent of their total purchases were ineligible items, including beer, cigarettes, soap, paper products, and other nonfood items. All of the ineligible purchases were made from one clerk, Mrs. Ilda Bryant, at a time when she was the only checkout cashier in the store, and at a time when Mr. Tant and his assistant were not present.

On June 24, 1977 FNS sent Mr. Tant a notice that it had reason to believe that the store had violated the food stamp regulations. Mr. Tant protested the charge in a personal visit to the FNS field office, but was found in violation and given a 60-day suspension. This decision was upheld by the Agency on October 12, 1977. Mr. Tant then sought *de novo* review before a state court, and FNS removed to the federal district court.

At the *de novo* hearing in federal district court, the magistrate heard testimony from a number of witnesses, including the clerk who allowed purchase of the ineligible items. Mrs. Bryant testified that she had a history of nervousness and was uneasy and uncomfortable in the presence of the two investigators, who were unshaven, large white males, wearing old clothes. Because the store is in a predominantly black area, and it was unusual to see white males in the store, she testified that she was uncomfortable and intimidated, and felt she had to accept their food stamps in payment for all purchases.

The magistrate concluded that even assuming as true all the testimony concerning the appearance and activities of the undercover agents in the store, these facts failed to show that a clerk with Mrs. Bryant's age and maturity, with twelve years' tenure at Mr. Tant's store, could reasonably have been frightened or intimidated sufficiently to violate understood policy. He therefore rejected as inherently incredible her explanation for the sales. Applying the rule of the Fourth Circuit in *Cross v. United States*, 512 F.2d 1212 (4th Cir. 1975), which allows judicial review of the administrative sanction imposed for a violation of the Food Stamp Act under an abuse of discretion standard, the magistrate found that the imposition of a sixty-day penalty fell clearly within the range envisioned by the regulation. Upon this evidence, the magistrate found the FNS could have imposed an even stiffer sanction. There was therefore no abuse of discretion.

Mr. Tant argues that the FNS violated its own regulations because it did not send a warning letter prior to charging him with a violation. Without a warning letter, he argues, the penalty should have been thirty rather than sixty days. Section 278.6 of Title VII of C.F.R. governs disqualification of retail food stores for food stamp violations. Subsection (e) outlines the penalties that should be imposed in various situations. Subparagraph (2) provides for a one-year suspension if it is the "firm's policy to sell expensive or conspicuous nonfood items, cartons of cigarettes, or alcoholic beverages ... and the firm has engaged in such practices...." 7 C.F.R. § 278.6(e)(2)(i)(A). For unusually serious violations, no warning letter is needed. *Id.* § 278.6(e)(2)(ii).

Other subsections provide for lesser periods of disqualification in less severe circumstances. Paragraph (5) provides:

> (5) Disqualify the firm for 60 days if the evidence shows that violations such as those described in paragraph (3)(i) of this subsection occurred, but that the violations resulted from carelessness or poor supervision by the firm's ownership or management.

Paragraph (3)(i) reads:

> (i) The evidence shows that it is the firm's policy to commit violations such as the sale of common nonfood items in

amounts normally found in a shopping basket and the firm was warned about the possibility that violations were occurring and of the possible consequences of violating the regulations, . . . .

Mr. Tant argues that because no warning letter was sent paragraph (6)(i) should apply:

(6) Disqualify the firm for 30 days if the evidence shows that:

(i) Violations such as those described in paragraph (3)(i) of this subsection occurred as a result of carelessness or poor supervision by the firm's ownership or management, but FNS has not specifically warned the firm about the possibility that violations are occurring and of the possible consequences of violating the regulations, . . . .

Mr. Tant's argument is without merit because among the ineligible items sold were cigarettes and beer, clearly not "common nonfood items." Mr. Tant's situation does not fall neatly into any paragraph under § 278.6(e). Given the number and kind of ineligible items purchased, it was well within the discretion of FNS and within the scope of the regulations to disqualify him for sixty days even though no warning letter had been issued.

Mr. Tant also asserts that the failure of FNS to follow the guidelines governing the imposition of sanctions, FNS Guidelines 744–9, was an abuse of discretion. Specifically, Section IVF of the Guidelines states that "[a] warning letter will normally be the final determination in the following situations: . . . (3) The evidence clearly shows that the violations occurred contrary to the retailer's policy." Because the sales here were apparently contrary to Mr. Tant's policy, he argues that a warning letter was the appropriate sanction. Those Guidelines further provide, however, that in determining whether the violations warrant a more serious penalty, the FNS should consider many factors, including the ratio of ineligible items to total purchases, § III(A)(4)(b), the types of ineligible items, § III(A)(4)(a),[1] the portion of clerks involved, § III(A)(5), whether the sales were inadvertent or deliberate, § III(A)(4)(b) and (B), and whether the violations were pursuant to store policy, § III(B)(4).

There were several factors present here which make this violation potentially serious. Sixty-three percent of the items purchased were ineligible. Further, there were some major non-grocery items sold, most particularly beer. We find no abuse of discretion in the FNS determination that a warning letter need not be issued prior to charging a violation.

We find no error in the magistrate's analysis. The FNS acted well within the scope of both the regulations and the guidelines in imposing a sixty-day penalty. We also find no indication that the store's history of a greater than average rate of food stamp redemption was a factor in setting the penalty.

*AFFIRMED.*

---

1. Section III(A)(4)(a) divides ineligible items into three categories:

(1) Marginal Ineligible Items are items which can easily be mistaken for eligible items and sold for coupons through oversight. EXAMPLES: canned pet food or imported food products.

(2) Common Grocery Type Ineligible Items are easily identifiable ineligible items of low cost.

EXAMPLES: cleaning products such as soap, or paper products such as toilet tissue.

(3) Major Non-Grocery Type Ineligible Items are alcoholic beverages and easily identifiable items of high cost. EXAMPLES: clothing, home furnishings, hardware, cartons of cigarettes, or alcoholic beverages.