829 F.2d 1121
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Betty Jean WOODHOUSE, Plaintiff-Appellant,
v.
NORFOLK SCHOOL BOARD; Thomas G. Johnson, Jr.; John H.
Foster, Vice Chairman, Norfolk School Board; Jean C. Bruce;
Cynthia A. Heide; Hortense R. Wells; Gene R. Carter;
Robert L. Hicks; Garland C. Ames, individually and in his
capacity as principal of Larrymore Elementary School,
Defendant-Appellees.
City of Norfolk, Defendant.
 No. 86-2095.
 United States Court of Appeals, Fourth Circuit.
 Sept. 16, 1987.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Richard B. Kellam, Senior District Judge. (CA-85-56-N)
 Sa'ad El-Amin for appellant.
 Allan Simpson Reynolds (Reynolds, Smith & Winters, on brief), for appellee.
 Before CHAPMAN and WILKINS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 CHAPMAN, Circuit Judge:
 
 
 1
 Appellant Betty Jean Woodhouse, a former school teacher, brought this action alleging violations of her rights under the First and Fourteenth Amendments resulting from the termination of her employment by the Norfolk School Board. Following a bench trial, the district court found that Woodhouse's due process rights were not violated by her termination, and that plaintiff was not unlawfully discharged for exercising her First Amendment rights. Woodhouse appeals these findings, and also the ruling by the district court that collateral estoppel, based upon a finding in her favor by the Virginia Employment Commission, did not preclude the relitigation of the legality of her discharge. We affirm.
 
 
 2
 * Until her termination in May 1984, Woodhouse had been employed since August, 1972 in the Norfolk Public School System. For several years, Woodhouse's teaching record has been far from exemplary. She had problems with several of the school principals, and she threatened to file grievances against superiors who had not treated her in the manner which she deemed appropriate. She had altercations with the superintendent of schools, the director of personnel, the coordinator of a summer reading program, and each of the last three principals under whom she had served.
 
 
 3
 During the 1978-79 school year, Woodhouse complained of her evaluation by the principal at west School. The principal then charged her with insubordination based upon her refusal to follow prescribed procedure and instructions. Woodhouse's complaints were found to be groundless. This principal enumerated the problems which he had experienced with the plaintiff. These problems included: parents complaining that Woodhouse had been rude to them, parents removing students from the school, and parents requesting their children to be transferred to another teacher. Subsequently, Woodhouse applied for a transfer. At Roberts Park School, her next place of employ, her problems continued. The principal of that school testified that Woodhouse would frequently argue about policies and activities in which she was required to participate.
 
 
 4
 Because of her problems at Roberts Park, Woodhouse was placed on a "Plan of Action". This is a disciplinary program for teachers and is designed as a last ditch effort to save teachers from discharge. After several months, Woodhouse was found to have satisfactorily met the requirements of the "Plan of Action". Satisfying the requirements of such a plan does not relieve a teacher from further consideration of the same or future problems.
 
 
 5
 In the fall of 1982, plaintiff was transferred to Larrymore Elementary School. Although seemingly little controversy occurred during the first six months that plaintiff was at Larrymore, there were underlying problems. Woodhouse was occasionally absent from faculty meetings and in-house days without providing the principal with the requisite written notice, and, during her first and only year at Larrymore, she was absent from school thirty-eight days.
 
 
 6
 The controversy from which this suit arose began in February 1983. February is Afro-American History Month, and, at Larrymore, teachers were encouraged to create displays in their classrooms chronicling the accomplishments and undertakings of blacks. Dr. Jessie Allen, the Assistant Superintendent for the region, visited the school and noted the activity. One of Woodhouse's classes placed a collage of photographs taken from magazines upon a school bulletin board. The principal, of Larrymore, Garland C. Ames, noted that the display was messy, depicted individuals engaged in smoking and drinking, and was gleaned from magazines rather than the work of students, and he requested ..that Woodhouse remove the display. Ultimately, based upon student interest in retention of the display, it was preserved.Later the Assistant Principal requested the plaintiff to move the display to another wall in the hallway because it was located in the area which was traditionally used for the Honor Roll Lists. Woodhouse did not move the display.
 
 
 7
 During this time another problem developed. The Assistant Principal entered Woodhouse's class one day and rebuked a student for placing her head on her desk. The next morning, Woodhouse called the student's parents and expressed concern over the Assistant Principal's treatment of their child. The parents then went to the school and demanded an explanation from the principal. The Norfolk School svstem has a very structured procedure by which teachers may report the improprieties of their peers or their superiors. It is against school policy for a teacher to inform parents of problems between administrators and students. Woodhouse made no effort to follow these procedures.
 
 
 8
 After these problems had surfaced, an article appeared in the Journal and Guide, a weekly newspaper published in the City of Norfolk and aimed primarily at the black population. In this article, Woodhouse discussed her version of the dispute over the collage in the hallway at the school. She implied that this dispute seemed to be based upon racial motives. These and other comments in the story gave the impression that a racial problem existed at Larrymore. Principal Ames was upset about the article. Because the school is 60 percent black and he is white, Ames is particularly sensitive to racial tension. Ames complained to the Regional Superintendent.
 
 
 9
 In June 1983, Principal Ames told Woodhouse that he was not recommending her for reappointment. The Teachers Evaluation Committee recommended plaintiff's dismissal and the School Superintendent so notified her. The testimony of the Principal and the School Superintendent indicates that even had the disputed article not been published, Woodhouse's employment would have been terminated. Similarly, the Regional Superintendent testified that the records showing that plaintiff had experienced difficulty with three or four principals indicated that she could not be successful in any Norfolk public school.
 
 
 10
 After the decision of the Superintendent, a Fact Finding Panel was established pursuant to state law. Following a hearing, the panel filed a report in which it recommended that Woodhouse be placed upon probation. The School Board examined the facts found in the recommendation of the Fact Finding Panel and exercised its exclusive final authority to terminate Woodhouse's employment. The School Board provided a written rationale for its decision and Woodhouse's employment was terminated.
 
 
 11
 In August 1984, Woodhouse filed a claim for benefits with the Virginia Employment Commission (VEC). The School Board opposed her application, asserting she was disqualified for benefits because she had been appropriately discharged under what is now Va. Code Sec. 60.2-618.2 (Supp. 1986) (replacment to Va. Code Sec. 60.1-58(b)(1982) which was repealed effective Jan. 1, 1987) for misconduct connected with her work. The Appeals Examiner held that Woodhouse was discharged for reasons which did not constitute "misconduct" based upon the Virginia Supreme Court's definition of "misconduct" for the purposes of the unemployment compensation statute.
 
 
 12
 Woodhouse brought suit against the Norfolk School Board, the members of the Board, the Superintendent of the Norfolk Public Schools, and the Principal of Larrymore Elementary School, individually and in their official capacities. She alleged violations of her rights under the First and Fourteenth Amendments of the United States Constitution. She sought damages and reinstatement to her position as a sixth grade teacher. After a trial, the district court held that Woodhouse's due process rights were not violated by the termination of her employment, and that she was not unlawfully discharged for exercising her First Amendment Rights by submitting to an interview with a local newspaper, because even absent the publication of the disputed article, her employment would have been terminated.
 
 II
 
 13
 Woodhouse first contends that the appellants are collaterally estopped from arguing that she was not wrongfully discharged because the Virginia Employment Commission determined that she was not dismissed for "misconduct" as defined for the statutory purpose by the Virginia Supreme Court in Branch v. Virginia Employment Commission, 219 Va. G09, 249 S.E.2d 180 (1978). In holding that Woodhouse was not dismissed for "misconduct", the VEC stated that it was bound to follow Branch which holds that employment benefits could only be denied when an . employee was found guilty of "misconduct". In Branch, "misconduct" is explained as follows:
 
 
 14
 In our view, an employee is guilty of "misconduct connected with his work" when he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer. [citations omitted] Absent circumstances in mitigation of such conduct, the employee is . "disqualified for benefits," and the burden of proving mitigating circumstances rests upon the employee. (citations omitted]
 
 
 15
 219 Va. at 611, 249 S.E.2d at 182.
 
 
 16
 The ruling of the VEC in Woodhouse's case specifically stated: "While no issue is taken with the employer's decision to terminate the claimant, the Appeals Examiner must conclude that the claimant was discharged for reasons not constituting misconduct in connection with her work as that term is defined by the Act."
 
 
 17
 Collateral estoppel means simply that when an issue of fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit. Ashe v. Swenson, 397 U.S. 436, 443 (1970). The court must inquire whether the issues presented in the first and in the second actions are in substance the same. For collateral estoppel to apply, the question expressly and definitely presented in the suit at hand must be the same as that definitely and actually litigated and adjudged previously. Hughes v. Heyl & Patterson, Inc., 647 F.2d 452, 455 (4th Cir. 1981).
 
 
 18
 In this case, the VEC decided that under what is now Va. Code Sec. 60.2-618.2 as interpreted by the Virginia Supreme Court in Branch, plaintiff had not been discharged for "misconduct" as the term "misconduct" applies to eligibility of a former employee to receive unemployment compensation benefits. However, under Virginia Code Sec. 22.1-307 (1985) "teachers may be dismissed or placed on probation for incompetency, immorality, noncompliance with school laws and regulations, disability as shown by competent medical evidence, conviction of a felony or a crime of moral turpitude or other good and just cause." (emphasis added).
 
 
 19
 The attempt by the School Board to prove "misconduct" before the VEC does not mean that the School Board could only discharge appellant for misconduct or that it was bound by the VEC definition of misconduct or bound by its finding of lack of misconduct. The School Board may terminate for "good and just cause" and it is not collaterally estopped by the finding of the VEC. The issue before the district court and the issue before the VEC were not the same and collateral estoppel does not apply.
 
 IV
 
 20
 Woodhouse claims that the School Board violated her due process rights by refusing to accept the recommendation of the Fact Finding Panel that she be placed on probation rather than fired. Under Va. Code Sec. 22.1-313 (1985), the School Board retains exclusive final authority over matters concerning dismissals. There is no allegation here that the School Board failed to satisfy its statutory obligations. Because a hearing was held before a Fact Finding Panel, the School Board was obligated to submit a written decision, which it did and since its written decision was at variance with the recommendations of the Fact Finding Panel, the School Board was obligated to include a rationale for its decision. Such a rationale was included in the School Board's written decision. See Va. Code Sec. 22.1-313(c). The School Board evaluated Woodhouse's record succinctly and voted to fire her.
 
 
 21
 An act by a government agency violates due process only if it is so capricious and arbitrary that it is without adequate determining principle or completely unreasoned. U.S. v. Carmack, 329 U.S. 230, 243 (1946). An act is arbitrary and capricious if it is unwarranted in law or without justification in fact. Cross v. United States, 512 F.2d 1212, 1218 (4th Cir. 1975). Absent allegations that it failed to act in good faith or outside the provisions of the law, the School Board will not be held to have violated a party's due process rights. The School Board and the public have an interest in the maintenance of an efficient, proper and disciplined school system. The School Board cannot carry out its object ive or perform its duties and responsibilities if its lawful discretionary decisions are challenged at every hand. As Justice Powell pointed out:
 
 
 22
 . . [T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, -and ultimately impair the efficiency of an office or agency.
 
 
 23
 Arnett v. Kennedy, 416 U.S. 134, 168 (1974) (i. Powell, concurring), quoted with approval in Connick v. Myers,461 U.S. 138, 151 (1983). Under a rational view of the facts and the law, Woodhouse's difficulty in getting along with her superiors, her general tendency to cause problems, her chronic absences, and her record of insubordination were sufficient to warrant her dismissal.
 
 V
 
 24
 Finally, Woodhouse argues that she was unlawfully discharged because she exercised her First Amendment right to speak on a subject of public concern in a local newspaper. A teacher's constitutional rights are violated where the teacher is dismissed for acts which constitute constitutionally protected conduct, such as freedom of speech. To establish that the defendant violated the teacher's constitutional rights, the teacher must establish: (1) that the conduct was constitutionally protected; and, (2) that the protected conduct was a substantial or motivating factor in the decision to discharge the teacher. Once the teacher has established both requirements, the burden passes to the defendant school district to show by a preponderance of the evidence that the teacher would have been dismissed even if the protected conduct had not occurred. Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 287 (1977).
 
 
 25
 The district court assumed that the article was protected speech, and chose to assume that the article played a substantial part in the actual decision to dismiss. Thus, whether Woodhouse would have been dismissed had the article not been published became the decisive issue in the case. See Mt. Healthy City Board of Education v. Doyle.
 
 
 26
 The evidence clearly and convincingly establishes that the publication of the article in the Journal and Guide, while objectionable, did not cause Woodhouse's discharge. The Principal, the Regional Superintendent, and the Superintendent all agreed that they would have called for plaintiff's dismissal without the article. As the district court found, Woodhouse had a troubled employment history and the record contained a multiplicity of incidents which taken together were sufficient to lead to her termination. These findings are not clearly erroneous.
 
 
 27
 For the foregoing reasons the opinion of the district court is affirmed.
 
 
 28
 AFFIRMED.