41 F.3d 1504
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jamil SALEH, d/b/a KB's Limited Fine Foods, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 94-1117.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 29, 1994.
Decided Dec. 6, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Chief District Judge. (CA-92-176-7-F)
 ARGUED: Maura Ackerman McCaughey, ZIMMER & ZIMMER, Wilmington, North Carolina, for Appellant. Charles E. Hamilton, III, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. ON BRIEF: Janice McKenzie Cole, United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before MICHAEL and MOTZ, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Jamil Saleh, d/b/a KB's Limited Fine Foods, operates a small grocery store in Wilmington, North Carolina. Saleh participated in the Food Stamp Program administered by the U.S. Department of Agriculture (USDA), Food and Nutrition Service ( FNS ). Saleh's one part-time clerk--without Saleh's knowledge or authorization--bought $300 worth of food stamps for $170 cash in two transactions. These illegal acts subjected both the clerk and Saleh to penalties. See 7 U.S.C. Secs. 2021, 2024 and 7 C.F.R. Sec. 278(i). The clerk was prosecuted and the FNS permanently disqualified Saleh from participation in the Food Stamp Program. Saleh sought judicial review of his disqualification by filing a complaint in the United States District Court for the Eastern District of North Carolina. On cross-motions for summary judgment, the district court concluded that Saleh failed to establish that he had an effective compliance policy and program to prevent violations of the Food Stamp Program. The district court upheld Saleh's disqualification, acknowledging that "[t]he result, indeed, is harsh." The result is very harsh, but the regulations leave no room for mercy in this case. We must affirm.
 
 I.
 
 2
 This case results from a USDA undercover operation aimed at rooting out illegal food stamp transactions. On August 28, 1991, USDA undercover agent Mark Wells entered Saleh's store and told the part-time clerk, Dameen Mohammad, that he (Wells) had $100 worth of food stamps he wanted to sell. Mohammad offered Wells $60 and Wells accepted. Mohammad then walked to the cash register and asked another man (who was never identified) to get $60 from the register. After being handed the money, Mohammad completed his deal with Wells. A week later Wells went to Saleh's store again and sold Mohammad another $200 worth of food stamps for $110 cash.
 
 
 3
 In July 1992, Mohammad pled guilty to one count of unlawful possession of food stamps, in violation of 7 U.S.C. Sec. 2024. The district court sentenced Mohammad to 18 months probation, fined him $1,000, and ordered him to pay $200 restitution.
 
 
 4
 On July 31, 1992, the FNS notified Saleh (1) that he was liable for Mohammad's "trafficking (exchange of food stamps for cash) violations" and (2) that it was considering permanently disqualifying Saleh and his store from the Food Stamp Program. Saleh responded, requesting that he be sanctioned with a civil money penalty in lieu of disqualification. See 7 C.F.R. Sec. 278.6(e)-(f); 7 U.S.C. Sec. 2021(b)(3)(B).
 
 
 5
 In support of his request for a lesser sanction, Saleh submitted two affidavits, his and Mohammad's. Saleh stated or indicated the following: (1) he did not know about, did not approve of, and did not benefit from Mohammad's food stamp trafficking; (2) no other food stamp violation had ever occurred at his store; (3) his only help was a part-time clerk; (4) he made sure that the clerk knew about the laws and regulations regarding the Food Stamp Program; and (5) he always tried to supervise his part-time clerk to insure compliance with the laws and regulations. Mohammad's affidavit totally supported Saleh. Mohammad swore that he used his own money to buy the food stamps and that Saleh knew nothing of his (Mohammad's) illegal activities.
 
 
 6
 FNS's acting officer-in-charge in Raleigh denied Saleh's request for a civil money penalty in lieu of disqualification as follows:
 
 
 7
 It is our finding that there is not substantial evidence that your firm had an effective policy and program in effect to prevent violations. You failed to submit documentation of training activity through dated training records and records of dates training sessions were conducted as required by section 278.6(I)(2)[sic] of the regulations.
 
 
 8
 The officer imposed permanent disqualification. Saleh then sought and was granted review of his disqualification by the Director of FNS's Administrative Review Division. An administrative review officer sustained the permanent disqualification.
 
 
 9
 Saleh next filed a complaint in federal district court, seeking judicial review of his permanent disqualification under 7 U.S.C. Sec. 2023(a).[1] In awarding summary judgment to the government, the district court concluded "that [Saleh] has not supplied'substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the [Food Stamp] Program.' 7 C.F.R. Sec. 278.6(i)." According to the district court, Saleh was not eligible for consideration of a civil money penalty in lieu of permanent disqualification. Thus, the sanction stood. Saleh appeals, and we review de novo the district court's award of summary judgment to the government.
 
 II.
 
 10
 We begin by looking at the applicable statute and regulations. Section 2021 of the Food Stamp Act instructs the Secretary of Agriculture to disqualify permanently a store found trafficking in food coupons, unless (1) the owner neither knew of nor benefited from the trafficking and (2) the store had an "effective policy and program" to prevent violations of the Act. 7 U.S.C. Sec. 2021(b)(3)(B). If the store owner proves, by substantial evidence, both innocence and an effective compliance policy and program, then the Secretary has the discretion to impose a civil money penalty in lieu of disqualification. Id.[2] Turning to the FNS regulations, section 278.6(e)(1)(i) provides for permanent disqualification of a store when its personnel have trafficked in food stamps. The regulations set forth extensive criteria under which an innocent owner can avoid permanent disqualification by proving an effective policy and program to prevent food stamp violations. 7 C.F.R. Sec. 278.6(i).[3]
 
 III.
 
 11
 The statute and regulations present us with two dispositive questions in this case. The first question is: did Saleh know of or benefit from the trafficking of his part-time clerk, Mohammad. The second question is: did Saleh have an effective compliance policy and program. If the answer to the first question is "yes" or the answer to the second question is "no", then Saleh's permanent disqualification must stand.
 
 
 12
 The first question is easily answered "no" in Saleh's favor. The undisputed Saleh and Mohammad affidavits establish that Saleh neither knew of nor benefited from Mohammad's trafficking.
 
 
 13
 Answering the second question is more difficult, but the answer is ultimately "no" and therefore fatal to Saleh's case. The regulatory criteria for proving an effective compliance policy and program plainly favor written and dated training manuals, logs, and policies. See 7 C.F.R. Sec. 278(i). Criterion 1 (development of an effective policy) and criterion 2 (policy and program in operation prior to violation), however, permit consideration of "[t]he nature and scope of the violation charged," the prior "record" of the firm, and "any other information the firm may present." Id. at Sec. 278(i)(1). Here, information responsive to these factors appears to favor Saleh. His store's prior record was clean, and he neither knew about nor benefited from Mohammad's limited violations.
 
 
 14
 Saleh, however, has not provided the documentation required under criterion 3 (effective personnel training program). Criterion 3 must be satisfied as follows:
 
 
 15
 A firm which seeks a civil money penalty in lieu of permanent disqualification shall document its training activity by submitting to FNS its dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s).
 
 
 16
 7 C.F.R. Sec. 278.6(i)(2) (emphasis added).
 
 
 17
 Saleh did not submit any dated training curricula. His conclusory affidavit did not provide any dates of training sessions for Mohammad, nor did his affidavit even provide the dates of Mohammad's employment. Finally, Saleh did not provide any contemporaneous documentation of Mohammad's participation in training. Saleh argues that the excessive paperwork required by the criteria is impractical and crippling for a small, owner-operated grocery store with one part-time employee.[4] Criterion 3, however, allows no exceptions. Saleh did not meet criterion 3, and therefore he did not establish that he had an "effective compliance policy and program" under the statute as implemented by the regulations. Accordingly, Saleh does not qualify for any sanction short of permanent disqualification.
 
 IV.
 
 18
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 A district court reviews de novo the FNS's determination that its regulations were violated. 7 U.S.C. Sec. 2023(a); Cross v. United States, 512 F.2d 1212, 1217-1219 (4th Cir.1975) (in banc)
 
 
 [2]
 The pertinent text of 7 U.S.C. Sec. 2021 is as follows:
 Sec. 2021. Civil money penalties and disqualification of retail food stores and wholesale food concerns
 ...
 (b) Period of disqualification
 Disqualification ... shall be--
 (3) permanent upon--
 ...
 (B) the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store or wholesale food concern, except that the Secretary shall have the discretion to impose a civil money penalty of up to $20,000 for each violation (except that the amount of civil money penalties imposed for violations occurring during a single investigation may not exceed $40,000) in lieu of disqualification under this subparagraph, for such purchase of coupons or trafficking in coupons or cards that constitutes a violation of the provisions of this chapter or the regulations issued pursuant to this chapter, if the Secretary determines that there is substantial evidence (including evidence that neither the ownership nor management of the store or food concern was aware of, approved, benefitted from, or was involved in the conduct or approval of the violation) that such store or food concern had an effective policy and program in effect to prevent violations of the chapter and the regulations....
 
 
 [3]
 7 C.F.R. Sec. 278.6(i)'s criteria are as follows:
 In determining the minimum standards of eligibility of a firm for a civil money penalty in lieu of a permanent disqualification for trafficking, the firm shall, at a minimum, establish by substantial evidence its fulfillment of each of the following criteria:
 Criterion 1. The firm shall have developed an effective compliance policy as specified in Sec. 278.6(i)(1); and
 Criterion 2. The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred prior to the occurrence of violations cited in the charge letter sent to the firm; and
 Criterion 3. The firm had developed and instituted an effective personnel training program as specified in Sec. 278.6(i)(2); and
 Criterion 4. Neither firm ownership nor management were aware of, approved, benefitted from, or were in any way involved in the conduct or approval of trafficking violations....
 (1) Compliance policy standards. As specified in Criterion 1 above, ... FNS shall consider written and dated statements of firm policy which reflect a commitment to ensure that the firm is operated in a manner consistent with this part 278.... As required by Criterion 2, such policy statements shall be considered only if documentation is supplied which establishes that the policy statements were provided to the violating employee(s) prior to the commission of the violation. In addition, in evaluating the effectiveness of the firm's policy and program to ensure FSP [Food Stamp Program] compliance and to prevent FSP violations, FNS may consider the following:
 (i) Documentation reflecting the development and/or operation of a policy to terminate the employment of any firm employee found violating FSP regulations;
 (ii) Documentation of the development and/or continued operation of firm policy and procedures resulting in appropriate corrective action following complaints of FSP violations or irregularities committed by firm personnel;
 (iii) Documentation of the development and/or continued operation of procedures for internal review of firm employees' compliance with FSP regulations;
 (iv) The nature and scope of the violations charged against the firm;
 (v) Any record of previous firm violations under the same ownership or management; and
 (vi) Any other information the firm may present to FNS for consideration.
 (2) Compliance training program standards. As prescribed in Criterion 3 above, the firm shall have developed and implemented an effective training program for all managers and employees on the acceptance and handling of food coupons in accordance with this part 278. A firm which seeks a civil money penalty in lieu of a permanent disqualification shall document its training activity by submitting to FNS its dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s).
 
 
 [4]
 The government says that the FNS has publications available which firms may use in their training programs