**Azzat Aly AMER, d/b/a 311 Grocery Store, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 6:96CV00686.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Nov. 5, 1996.

· Gordon A. Miller, Winston–Salem, North Carolina, for plaintiff.

Office of U.S. Attorney, Gill P. Beck, for defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction [Document # 4].

## I. PROCEDURAL HISTORY.

Plaintiff Azzat Aly Amer is the owner of the 311 Grocery Store in Winston–Salem, North Carolina. On June 20, 1994, Plaintiff entered into an agreement with the North Carolina Department of Environment, Health, and Natural Resources [DEHNR] to be an authorized vendor in the federal Women, Infants, and Children [WIC] food stamp program as administered in North Carolina. On May 17, 1995, the WIC Program notified Plaintiff of its intent to disqualify him from participating as a vendor in the program due to his violations of state WIC program regulations. The WIC program pointed to multiple acts of Plaintiff, including stocking food outside of the manufacturer's expiration date, failing to stock minimum inventory of approved foods, failing to redeem food stamps properly, charging more than the shelf price for food items, and charging for food not received by the program participant. On October 23, 1995, Administrative Law Judge Robert Roosevelt Reilly, Jr., issued a recommended decision concluding that Plaintiff had violated the relevant state regulations governing the WIC program. Judge Reilly recommended that Plaintiff be disqualified as an authorized WIC vendor for a period of three years. On January 17, 1996, the North Carolina State Health Director, Ronald H. Levine, issued a final decision affirming the conclusion of the Administrative Law Judge that Plaintiff be disqualified from the program for three years.

On April 18, 1996, the State of North Carolina forwarded a notice to the United States Department of Agriculture indicating that Plaintiff had been disqualified from the WIC program effective February 1, 1996. The United States Department of Agriculture notified Plaintiff on May 9, 1996, that Plaintiff's authorization to participate in the food stamp program was withdrawn due to the violations of WIC program regulations. On May 15, 1996, Plaintiff requested review of the decision to withdraw his authorization to participate in the program. On July 11, 1996, the United States Department of Agriculture Administrative Review Branch made a final determination that Plaintiff's authorization would be withdrawn. Finally, on August 6, 1996, the United States Department of Agriculture notified Plaintiff that he would no longer be authorized to participate in the food stamp program.

Plaintiff thereafter filed a Complaint in the Superior Court of North Carolina, Forsyth County, alleging that his disqualification from the program would cause him irreparable harm since his participation in the WIC program accounted for a significant portion of his income. Plaintiff moved for a Temporary Restraining Order to prevent the United States Government from withdrawing Plaintiff's authorization in the program. On August 12, 1996, Judge William Z. Wood, Jr., of Forsyth County Superior Court entered a Temporary Restraining Order preventing the United States from disqualifying Plaintiff from the program for a ten-day period. On August 22, 1996, Judge Todd Burke of Forsyth County Superior Court extended the Temporary Restraining Order for an additional ten days. The United States then removed the case to the United States District Court. On September 18, 1996, Plaintiff moved for a Temporary Restraining Order and a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## II. DISCUSSION.

Section 2023 of Title 7 provides in pertinent part that

> [w]henever ... a retail food store ... is disqualified [for violations of the WIC regulations], ... it may obtain judicial review [of the determination of the administrative agency] by filing a complaint against the United States in the United States court in which it resides ... requesting the court to set aside such determination.... During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action

pending the disposition of such trial or appeal.

7 U.S.C. § 2023(a) (1988). Plaintiff argues that the proper test for the resolution of his claim is the test enumerated by the Fourth Circuit in *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189 (4th Cir.1977). In *Blackwelder,* the Court noted that the analysis of claims for equitable relief involved a balancing of (1) the likelihood of a plaintiff's success on the merits, (2) a plaintiff's showing that it will suffer irreparable harm without relief, (3) a showing that granting the relief will substantially harm other parties, and (4) the public interest. *Blackwelder,* 550 F.2d at 193. Plaintiff argues that, since he has shown that he will be irreparably harmed by the action of the United States in disqualifying him from the WIC program, he is entitled to a Temporary Restraining Order and Preliminary Injunction pending the resolution of his claim on the merits.

■ The application of the *Blackwelder* analysis here is misplaced to the extent Plaintiff seeks to apply *Blackwelder* in the context of violations of the WIC regulations. The appropriate analysis in this instance is that described in *Food City, Inc. v. Rominger,* 917 F.Supp. 364 (M.D.N.C.1995). In *Food City,* the Court observed that "[i]t is well settled that in order to obtain a stay of the disqualification pending *de novo* judicial review, a plaintiff must show (1) irreparable injury if the stay is not granted and (2) a likelihood of prevailing on the merits." *Food City,* 917 F.Supp. at 366 (citing *Khalik v. U.S. Dep't of Agriculture,* 1994 WL 548213, *1 (N.D.Ill. Oct. 5, 1994)). The Court further noted that "Congress amended 7 U.S.C. § 2023(a) to add the 'likelihood of prevailing on the merits' requirement.... Since this amendment, courts have been unanimous in finding that both irreparable injury and a likelihood of prevailing on the merits are required for a stay of an administrative action under 7 U.S.C. § 2023(a)." *Id.* at 366 n. 1. The Court also indicated that Congress's amendment of § 2023(a) superseded the *Blackwelder* test in the context of WIC program violations and "was an indication that it wanted faster implementation of disqualifications." *Id.* at 367 n. 2 (citation omitted).

This Court therefore concludes that the proper test for the disposition of the motion at issue is that discussed in *Food City.* Other district courts have also analyzed motions for preliminary injunctions in the context of § 2023 in this manner. *See, e.g., Kim v. United States,* 822 F.Supp. 107, 109–14 (E.D.N.Y.1993); *Hanaina Enterprises, Inc. v. United States,* 806 F.Supp. 261, 263–64 (S.D.Fla.1992); *De La Nueces v. United States,* 778 F.Supp. 191, 193–96 (S.D.N.Y. 1991).

■ With respect to the first aspect of the § 2023 test, Plaintiff contends that he will suffer irreparable harm if his request for a preliminary injunction is not allowed. The basis of his argument is that he will lose fifty percent of his revenue if he is disqualified or suspended from participation in the food stamp program. Even assuming *arguendo* that Plaintiff will suffer irreparable injury, he is still not entitled to relief because he fails to meet the likelihood of success prong of the § 2023 standard. While Plaintiff does not contest the findings of the Administrative Law Judge with respect to the violations, he proffers seven reasons that he contends show that he is likely to succeed on the merits. The Court examines Plaintiff's contentions *seriatim* in support of its conclusion that Plaintiff is not likely to succeed on the merits of his claim.

(1) Plaintiff argues that the United States never made more than a "perfunctory inquiry" as to the effect of Plaintiff's disqualification from the WIC program on his customers and the neighborhood in which his store is located. The record reveals, however, that Administrative Law Judge Reilly found that two other WIC vendors were located within 1.3 miles of Plaintiff's store and that both were located on public transit routes. The United States Department of Agriculture Administrative Review Board subsequently sustained Judge Reilly's findings. Furthermore, with respect to Plaintiff's argument that local customers would suffer if Plaintiff's authorization in the program was withdrawn, the Board noted that, notwithstanding Plaintiff's concern for local customers, "[t]he regulations governing participation of retail food stores in the Food Stamp Program provide

for no alternative to withdrawal from the program in the circumstances which exist in this case." The Board also indicated that Plaintiff's argument "has no validity in this context as a basis for reversing the adverse action" against Plaintiff.

(2) Plaintiff also contends that the United States, by adopting the action taken by the State in suspending Plaintiff from the program, failed to exercise its own discretionary authority to determine the penalty to be levied against Plaintiff.[1] Plaintiff argues that 7 C.F.R. § 271.4 limits State agency action by providing in relevant part that "[t]he State agency shall be responsible for the administration of the program within the State, including, but not limited to: ... [k]eeping records necessary to determine whether the program is being conducted in compliance with these regulations[.]" 7 C.F.R. § 271.4(a)(6) (1995). Pursuant to this subsection, the State agency here, DEHNR, engaged in compliance buys and other measures to ensure that the statutory and regulatory provisions were being followed. Plaintiff contends, however, that DEHNR exceeded its authority when it subsequently suspended Plaintiff from participation in the WIC program for violations of the relevant state regulations. Plaintiff argues that, instead of making its own independent determination of the appropriate penalty, the United States Department of Agriculture merely adopted the action of the State when it notified Plaintiff on May 9, 1996, that his authorization to participate in the food stamp program was withdrawn for a three-year period concurrent with the state suspension.

On May 15, 1996, Plaintiff requested administrative review of the authorization withdrawal by the United States Department of Agriculture based upon the action taken by the State. On July 11, 1996, the administrative review officer found that Plaintiff's disqualification was proper, and therefore sustained the withdrawal of Plaintiff's authorization to participate in the program. The Court finds that the exercise of discretionary authority by the United States in reviewing and sustaining the action by the State that led to Plaintiff's disqualification was proper. The Court further finds that Plaintiff was not prejudiced by this procedure.

(3) Plaintiff contends that the United States failed to provide him with proper notice of the possible withdrawal of his authorization to participate in the program. The record reveals, however, that Plaintiff received certified letters from the WIC program dated May 17, 1995, and June 28, 1995, notifying him of the intent to disqualify him due to the violations described previously. Furthermore, the June 28, 1995, letter to Plaintiff from Cory Menees, a staff member at DEHNR, stated that the "disqualification from WIC may result in withdrawal of authorization to participate in the Food Stamp Program per Section 278.1(n) of Food Stamp Program Regulations." Plaintiff also received a certified letter about the disqualification from Cory Menees on January 24, 1996, seven days after Director Ronald H. Levine issued his final decision with respect to Plaintiff's disqualification from the program. The Court finds that Plaintiff had adequate notice that his authorization to participate in the food stamp program would be withdrawn.

(4) Plaintiff further complains that the United States dealt with Plaintiff's wife, Barbara Amer, as if she were an owner of 311 Grocery. Plaintiff argues that all information relating to his operation of the store should have been directed only to him. Plaintiff, however, had not previously complained about other correspondences that were mailed to both he and his wife. Several letters, including a February 24, 1994, letter of warning, letters of May 16, and June 21, 1994, notifying Plaintiff that his business had accumulated a number of sanction points, and the aforementioned letters of May 17 and June 18, 1995, were all addressed to "Mr. and Mrs. Azzat Aly Amer." While the evidence may indicate that Plaintiff was out of the United States from October 1994 to

---

1. Plaintiff apparently argued to the Administrative Review Board that the regulatory provision at issue here is unconstitutional. Plaintiff does not offer any argument to this effect in his Motion or Complaint, and the Court therefore declines to address the question in the disposition of this Motion.

July 1995, the Court finds nonetheless that Plaintiff, whether directly or indirectly through his wife, had knowledge of and continued to receive notification of violations of WIC regulations and of his status within the WIC program.

(5) Plaintiff contends that, since he was out of the country during the time of the alleged violations of the WIC program, the United States cannot show that he was negligent in training his employees or that the alleged violations of the WIC program were for the Plaintiff's personal benefit. Neither of these circumstances is relevant in the determination of whether Plaintiff's participation in the WIC program should be withdrawn. For the purposes of the program, Plaintiff was doing business as a retail food store known as the 311 Grocery Store. In 7 U.S.C. § 2021, Congress provided for the disqualification of "a retail food store" from the program for violations of the statute or the relevant regulations. In *Freedman v. U.S. Dept. of Agriculture,* 926 F.2d 252 (3d Cir.1991), the Third Circuit noted that the pertinent language in § 2021 supported the conclusion that "permanent disqualification is permissible for even an independent trafficking offense without any proof of knowledge and/or benefit to the owner." *Freedman,* 926 F.2d at 261 n. 13 (citing *Kulkin v. Bergland,* 626 F.2d 181, 183 (1st Cir.1980)). Therefore, Plaintiff's arguments have no merit.

(6) Plaintiff also contends that the United States failed to give adequate consideration to monetary penalties before imposing disqualification as a sanction. Section 278.6(f) provides that the Food and Consumer Services may impose a civil monetary penalty instead of disqualification

> when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices.

7 C.F.R. § 278.6(f)(1) (1995). As discussed previously, the Administrative Law Judge appropriately considered the fact that there were two nearby retail stores that could provide service to food stamp households. The Administrative Law Judge also determined that there was no evidence that the prices at these other stores would inhibit participation in the food stamp program. Therefore, the circumstances in this case did not require that a monetary penalty be imposed in lieu of disqualification as a sanction.

(7) Plaintiff finally complains about the delay of his receipt of notice of his disqualification. He contends that the delay, consisting of one year from the alleged violations and six months from the recommended decision of the Administrative Law Judge, was not warranted. As discussed previously, Plaintiff had received adequate notice of his violations, of the sanctions that were being imposed, and of the disqualification of his store from participating in the WIC program. Plaintiff therefore suffered no prejudice from any alleged delay in the State's notification of his status within the program.

■■■ Plaintiff argues in his Reply that the sum and substance of his motion for a Temporary Restraining Order and Preliminary Injunction is that he was denied procedural due process. Plaintiff cites *Turnage v. United States,* 639 F.Supp. 228 (E.D.N.C. 1986), for the proposition that, even if he is unable to show irreparable harm, the Court should allow his motion for equitable relief because the failure to do so will deprive him of the procedural process due him. The Court in *Turnage* considered three factors in determining whether the plaintiff in that case had been deprived of his procedural rights: (1) the private interest to be affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures at issue and the probable value, if any, of further procedural safeguards; and (3) the governmental interest, including the function at issue and the fiscal and administrative burdens that the further procedural requirements would precipitate. *Id.* at 232–33; *see also Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33 (1976). At this stage of the proceedings, the primary concerns are whether the action by the administrative agency is reached through an acceptable process that ensures procedur-

al due process for the Plaintiff and whether the government's interest in preventing violations of the rules and regulations at issue is protected. With respect to the first concern involving procedural due process, this Court finds that Plaintiff was provided every opportunity in this case to be heard at the administrative level. This included a review of his case by the Administrative Law Judge, the North Carolina State Health Director, and the Administrative Review Board of the United States Department of Agriculture. The procedural safeguards represented by this review process diminish any risk of erroneous deprivation of Plaintiff's procedural due process rights.

Furthermore, based upon the actions taken by the State agency and the federal WIC program, it is clear that the interest of the government in addressing the violations by Plaintiff was protected. The Court finds that the result reached was appropriate, even when viewed in light of the Plaintiff's strong interest in continued participation in the WIC program, since "the government's interest in reducing food stamp abuse through rapid implementation of disqualification decisions is stronger" than Plaintiff's interest. *Food City,* 917 F.Supp. at 367 (footnote omitted).

Finally, while Plaintiff requests that this Court provide him with additional procedural relief in the form of a Temporary Restraining Order and Preliminary Injunction, such a remedy is not necessary to the extent that Plaintiff may pursue a trial *de novo* pursuant to § 2023(a) of the Food Stamp Act irrespective of this Court's disposition of the motion at issue here. The Court finds that, given the comprehensive findings of the administrative agency, Plaintiff has failed to demonstrate his likelihood of succeeding on the merits with respect to the request to stay his disqualification from participation in the WIC program. Therefore, Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction is hereby denied.

### III. CONCLUSION.

For the foregoing reasons, the Motion of Plaintiff Azzat Aly Amer for a Temporary Restraining Order and Preliminary Injunc-

tion [Document # 4] is hereby DENIED. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.