**AMEIRA CORPORATION, d/b/a John's Curb Market, Plaintiff,**

v.

**Ann M. VENEMAN, Secretary of the United States Department of Agriculture, and Marilyn P. Carpenter, Officer–In–Charge of the Raleigh Field Office for the Department of Agriculture, Defendants.**

No. 1:01CV00673.

United States District Court,
M.D. North Carolina.

Aug. 17, 2001.

J. David James, Seth R. Cohen, Smith, James, Rowlett & Cohen, Greensboro, NC, for Plaintiff.

Gill P. Beck, Office of U.S. Atty., Greensboro, NC, for Defendant.

### MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge.

.This matter is before the court on a motion for a temporary restraining order and preliminary injunction filed by Plaintiff Ameira Corporation, d/b/a John's Curb Market. The motion arises from the decision of the United States Department of Agriculture (USDA) to permanently disqualify Plaintiff from participation in the Food Stamp Program (FSP) for allegedly trafficking in food stamps, as defined in 7 C.F.R. § 271.2. Plaintiff previously filed a complaint in state court, which has since been removed to federal court, alleging that Defendants Ann Veneman and Marilyn Carpenter (Carpenter), both acting in their official capacity for USDA, deprived Plaintiff of due process and of property in violation of the Fifth Amendment and

seeking a declaratory judgment that the provisions of 7 U.S.C. § 2023(a)(18), 7 C.F.R. § 278.8(a), and 7 C.F.R. § 279.10(d) violate the Fifth Amendment. Concurrently, Plaintiff filed a motion for a temporary restraining order and a preliminary, as well as permanent, injunction prohibiting Plaintiff's permanent disqualification. A hearing on Plaintiff's motion for a temporary and preliminary injunction was held before the court on July 18, 2001. For the reasons herein, the court will deny Plaintiff's motion.

## I. FACTUAL BACKGROUND

Plaintiff had been authorized to participate in the FSP as a retail food store since October 15, 1996. On December 17, 1998, the USDA Food and Nutrition Service (FNS) notified Plaintiff that evidence had been compiled indicating that John's Curb Market had been engaged in FSP trafficking violations on October 31, 1996, and December 10, 1996.[1] Plaintiff's counsel responded to the notification on December 18, 1998, requesting complete information concerning the alleged sales. On January 21, 1999, FNS sent a letter to Plaintiff that included the FNS investigative report.

The investigative report withheld the names and any identifying particulars of the persons who were allegedly witnesses to the two sales, as well as other information requested by Plaintiff's counsel. On February 11, 1999, and again on March 11, 1999, Plaintiff's counsel wrote to Defendant Carpenter seeking this additional information and denying that the alleged illegal sales had taken place. In addition, Plaintiff's counsel argued that details of the investigative report were inaccurate. Meanwhile, on March 3, 1999, Plaintiff's counsel filed an appeal under the Freedom of Information Act (FOIA) to receive additional information. On March 25, 1999, the USDA notified Plaintiff's counsel that the original denial was upheld because the information was exempt under 5 U.S.C. 552(b)(6) and 552(b)(7)(C).

On September 27, 2000, Carpenter sent Plaintiff a copy of the original December 17, 1998, notification of FNS charges via certified mail to properly serve it. Plaintiff's counsel on October 4, 2000, raised the same objections to the withheld information on the investigative report and again denied the allegations. On June 28, 2001, the FNS notified Plaintiff that it was permanently disqualified from the FSP. Plaintiff's July 6, 2001, administrative appeal seeking review of Carpenter's decision is pending. Plaintiff then filed, on July 9, 2001, the action before the court.

The facts stated in the FNS investigative report are as follows. On October 31, 1996, an employee of John's Curb Market provided an investigative aid of the USDA $60.00 in exchange for $100.00 in food stamp coupons. The only clerk present in the store was described as having a dark complexion and full beard and mustache. On December 10, 1996, an employee of John's Curb Market gave an investigative aid $50.00 in cash in exchange for $105.00 in food stamps. The clerk was described as having a thick mustache, but no beard, and identified in the report as "Sam." Further details stated that the clerk was the co-owner of the store and that his car, a Nissan Maxima, was parked in the lot.

On June 2, 1998, over a year later, an FNS investigator spoke with Omer Ahmed (Ahmed), the assistant manager of John's Curb Market, and Keith Everett (Everett), the manager. The investigator told Ever-

---

1. The court is troubled by the considerable period of time that passed before Plaintiff was notified of the charges but does not find the administrative delay to have bearing on the matter before it.

ett and Ahmed that visits had been made to the store on two prior dates and described the clerks who had been working. Everett said that he was the clerk who had been working on October 31, 1996, and that co-owner Isa Abu Zuaiter (Zuaiter) was the clerk described in the December 10, 1996, report.

Plaintiff is also a participant in the Women with Infants and Children Program (WIC). Permanent disqualification from the FSP results in ineligibility to participate in WIC. Plaintiff alleges that his sales under FSP and WIC totaled $39,073.00 during the period from January 1, 2001, through May 31, 2001, which constituted 12 to 15 percent of Plaintiff's food sales. In addition, FSP and WIC customers buy a significant amount of food items not covered by the programs. In addition, Plaintiff alleges that John's Curb Market is located in a low-income neighborhood, and other grocery stores are in less convenient locations. As stated in the June 28, 2001, notification from the FNS, Plaintiff's permanent disqualification was effective upon receipt.

## II. DISCUSSION

### A. *Procedural Provisions of the Food Stamp Act*

The Food Stamp Act of 1977 (the Act), 7 U.S.C. §§ 2011–2029, was enacted to improve nutrition in low-income homes. Participating households receive an allotment of food stamp coupons to buy food at approved retail food stores. *See* 7 U.S.C. §§ 2016(b), 2018. A store must submit an application to the USDA to be authorized to accept and redeem food stamp coupons. Once it has received a certificate of approval, the store may accept food stamps as payment for food. Exchanging food stamps for cash, however, is strictly prohibited. *See* 7 U.S.C. § 2021(b)(3)(B); 7

C.F.R. § 278.2(a). Such conduct is defined as "trafficking" under 7 C.F.R. § 271.2.

The Act imposes severe sanctions against stores that violate the statute or regulations. *See* 7 U.S.C. § 2021. Trafficking is punished particularly harshly. The statute requires that a store be permanently disqualified from further participation in the FSP unless the Secretary of Agriculture determines that the store had an effective policy and program in effect to prevent violations of the Act and regulations, in which case the Secretary has the discretion to impose a civil monetary penalty in lieu of disqualification. *See* 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1)(i).

The food stamp regulations proscribe the procedure to be followed by the FNS when a store allegedly commits a violation. *See* 7 C.F.R. § 278.6. When considering disqualification of a store arising from an investigation, the FNS sends a "charge letter" specifying the violations constituting the basis for disqualification. *See* 7 C.F.R. § 278.6(b). In this case, Plaintiff was charged with trafficking in violation of 7 C.F.R. § 271.2(a). The retailer may respond to the charges orally or in writing. *See id.* The retailer may submit "information, explanation, or evidence concerning any instances of noncompliance before a final determination is made." 7 C.F.R. § 272.6(b). The FNS then determines whether a violation has occurred and imposes a sanction based on the charge letter, the retailer's response, and any other information available to it. *See* 7 C.F.R. § 272.6(c). However, the retailer is not afforded the opportunity to confront his accusers or to cross-examine witnesses and test their credibility. *See Cross v. United States,* 512 F.2d 1212, 1216 (4th Cir.1975).

The retailer may request review of an adverse determination by the FNS Administrative Review Division, *see* 7 C.F.R.

§§ 278.8(a), 279.2, and may file written information and appear before a review officer. *See* 7 C.F.R. § 279.7(b)-(c). In addition, a retailer may seek judicial review of an adverse administrative decision in federal or state court. *See* 7 C.F.R. § 279.10(a). The court reviews the administrative action *de novo. See Cross,* 512 F.2d at 1215. The Fourth Circuit has held that the court may review the sanction only to determine whether it was arbitrary and capricious. *See id.* at 1218.

The FNS sanction of permanent disqualification for trafficking is effective from the date of receipt of the notice of disqualification. *See* 7 U.S.C. § 2023(a)(18). As discussed below, the Act and the regulations do not provide for a stay of permanent disqualification during either the administrative appeal or the pendency of any judicial review. *See* 7 U.S.C. § 2023(a)(18); 7 C.F.R. §§ 278.8(a), 279.10(d). Moreover, the Act states that the government shall not be liable for any losses incurred during the disqualification period, even if the disqualification is later reversed. *See* 7 U.S.C. § 2023(a)(18); 7 C.F.R. § 279.10. Prior to 1996, disqualification was not effective until administrative review was completed. The court will analyze Plaintiff's contention that the legislative change results in a violation of his due process rights below.

B.  *Provisions for Judicial Stay*

█ Although Plaintiff seeks a stay pending judicial review of its permanent disqualification, the Act does not allow a stay to be granted in the case of food stamp trafficking. Section 2023(a)(18) of Title 7 of the United States Code provides in pertinent part:

Notwithstanding any provision of this subsection, any permanent disqualification of a retail food store ... shall be effective from the date of receipt of the

notice of disqualification. If the disqualification is reversed through administrative or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period.

The legislative history of this provision, which became effective August 22, 1996, reflects Congress' concern that losses from fraud to the FSP were estimated to exceed $1 billion each year. *See* Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Welfare Reform Act), Pub.L. No. 104–193, House Report 104–725 (July 30, 1996), 1996 U.S.C.C.A.N, at 2201, 2202. The House Committee added several provisions to combat food stamp trafficking, including the language that became 7 U.S.C. § 2023(a)(18), stating that "[t]he committee believes that where an authorized retail food store or wholesale food concern is permanently disqualified, such disqualification should be effective from the date of receipt of the notice of disqualification pending any administrative or judicial review." *Id.* at 2203.

The USDA has interpreted the statutory program to include how § 2023(a)(18) and § 2023(a)(17), which authorizes stays under certain conditions, should be interpreted. The implementing regulation for 7 U.S.C. § 2023 governs the interpretation of the statute, providing as follows:

Stay of action. During the pendency of any judicial review, or any appeal therefrom, the administrative action under review shall remain in force unless the firm makes a timely application to the court and after hearing thereon, the court stays the administrative action after a showing that irreparable injury will occur absent a stay and that the firm is likely to prevail on the merits of the case. *However, permanent disqualification actions taken in accordance with § 278.6(e)(1) [sanction for traffick-*

ing] of this chapter shall not be subject to such a stay of administrative action. If the disqualification is reversed through administrative or judicial review, the secretary shall not be liable for the value of any sales lost during the disqualification period.

7 C.F.R. § 279.10 (emphasis added). In addition, the USDA has interpreted the Act to mean that a stay of permanent disqualification is not available during administrative review where the sanction is for a trafficking violation. *See* 7 C.F.R. § 278.8(a). Because a district court may not stay an administrative action during judicial review in trafficking cases such as this one, Plaintiff is not entitled to a stay pending a trial *de novo* or pending administrative review.

## C. *Application of the Stay Provision*

### 1. Plaintiff's Challenges to the FNS Findings

■ Plaintiff nonetheless argues that the court should grant a stay because the provisions of the statute and its implementing regulations violate due process. However, even if the court were to consider a stay as authorized under certain circumstances by the statute, Plaintiff fails to satisfy the test. For Plaintiff to be entitled to consideration of a stay, it must show that the current statutory framework violates due process. This argument will be considered under the second prong of the required showing. To prevail and obtain a stay of disqualification pending judicial review, Plaintiff must show (1) irreparable injury if the stay is not granted and (2) a likelihood of prevailing on the merits. *See* 7 U.S.C. § 2023(a)(17); *Food City, Inc. v. Rominger*, 917 F.Supp. 364, 366 (M.D.N.C.1995). Though Plaintiff argues that the court should apply the balance-of-hardship test set forth in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d

189 (4th Cir.1977), application of the *Blackwelder* test is "misplaced to the extent Plaintiff seeks to apply [it]" in the context of food stamp violations. *Amer v. United States*, 948 F.Supp. 503, 506 (M.D.N.C.1996).

Even if the sanction of permanent disqualification is reversed, Plaintiff cannot recover any losses incurred while the disqualification was effective. Plaintiff has alleged that a substantial portion of its sales came from FSP and WIC customers. Thus, with regard to the first prong of the test for issuing a stay, the court will assume for purposes of its analysis that Plaintiff has satisfied the irreparable harm prong of the test.

Plaintiff argues that it has shown that it is likely to prevail on the merits because the investigative report contains inaccuracies, but Plaintiff's primary focus is the alleged constitutional infirmity of the FNS procedure. Plaintiff argues that the description of Zuaiter as being 40 years old, 6 feet tall, and weighing 180 pounds did not match his true appearance, because Zuaiter at that time was 44 years old, 5 feet 9 inches tall, and weighed about 225 pounds. Further, the report identifies the co-owner working on December 10, 1996, as "Sam" and states that he was driving a Nissan Maxima, while Plaintiff alleges that there is no co-owner named "Sam." Plaintiff also generally denies the alleged violations.

The court does not find the physical description of the clerk to be different in any material way from Plaintiff's description of Zuaiter at the time. In addition, Everett, a manager at John's Curb Market, was the one who identified Zuaiter as the clerk working on December 10, 1996. The fact that Zuaiter has never *owned* a Nissan Maxima does not establish that he was not driving one that day, nor is its ownership material to the question of

whether Plaintiff engaged in trafficking. Further, regardless of whether Zuaiter was the clerk present on December 10, 1996, courts have held that innocent owners can be subject to permanent disqualification for their employees' trafficking activities. *See Food City,* 917 F.Supp. at 366; *Holmes v. United States,* 868 F.Supp. 1348, 1354 (M.D.Ala.1994) (stating that, "[w]hile the result may seem harsh, the law establishes that an employer may be held accountable for the unlawful acts of his employees").

In *Food City,* the court found that the plaintiff could not establish a likelihood of prevailing on the merits where it alleged that the charged violations occurred while the owner was absent and that the employee named in the investigation denied any involvement in the transaction. The court stated that innocent owners were subject to disqualification for employees' activities. Further, "general denials ... are simply insufficient to establish a likelihood of success of the merits." *Food City,* 917 F.Supp. at 366. Plaintiff argues that, unlike in *Food City,* an opportunity to confront the investigator and investigative aid, cross-examine witnesses, and appear before an impartial fact finder is imperative because there are disputed factual issues. However, in asserting a general denial of the facts, any plaintiff is likewise putting the facts in dispute. Moreover, the court will take the disputed facts into consideration in deciding whether Plaintiff has a likelihood of success on the merits.

█ Plaintiff contends that it cannot present relevant information to combat the allegations without the information withheld under FOIA. While Plaintiff has the right to such information at the *de novo* hearing before the court, due process does not require a full evidentiary hearing before permanent disqualification, as discussed below. Further, the information sought by Plaintiff is not likely to contribute to Plaintiff's response to the FNS charges. Plaintiff has already denied the conduct; therefore, knowledge of the withheld names would not enable Plaintiff to prove this negative, particularly because the FNS investigator never interacted with the clerk, instead observing the transaction from outside.[2]

█ Plaintiff also argues that a full evidentiary hearing is constitutionally required because the description allegedly does not fit Zuaiter. However, as discussed, a store is subject to permanent disqualification even if the owner is innocent. Moreover, based on the present record, the court does not find that the alleged inaccuracies in the report alter the balance of the second prong in favor of Plaintiff. Therefore, Plaintiff has not shown a likelihood of success on the merits based on its response to the FNS charges.

### 2. *Due Process Challenge*

█ Plaintiff contends that it satisfies the second prong of the test for a stay because the statutory scheme does not comply with procedural due process. The due process clause provides that an individual cannot be deprived of property without constitutionally adequate procedure. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). To prevail on a due process claim, Plaintiff must demonstrate: (1) that he had a property interest in the FSP, and (2) he received inadequate process. *See id.* The Fourth Circuit held in *Cross,* 512 F.2d at 1217, that participation in the FSP is a property interest afforded procedural due

---

**2.** It is not clear on the record whether the government will seek to withhold the identity of the investigative aid as a confidential informant.

process. The administrative decision to disqualify Plaintiff took effect on the date in which Plaintiff received the FNS sanction letter, before a *de novo* trial and with no opportunity to request a stay. A trial *de novo* satisfies due process. *See Ibrahim v. United States*, 650 F.Supp. 163, 167 (N.D.N.Y.1987); *Food City*, 917 F.Supp. at 367. Therefore, the only issue before the court is whether the 1996 amendment to the Act making permanent disqualification effective prior to administrative review violates due process. While this question has not been addressed by courts before,[3] case law guides the court in its conclusion that the procedure provided under the FSP is constitutional.

The Supreme Court has held that "an individual must be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis added). The Court stated that "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* at 378, 91 S.Ct. at 786. While "some kind of prior hearing" is required prior to the discharge of an employee who has a property right in the employment, the Court has held that this requirement is satisfied by something less than a full evidentiary hearing. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

In *Arnett v. Kennedy*, 416 U.S. 134, 159, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974), the Court found that it was constitutionally sufficient for an employee to have had access to the material upon which the charge was based and to have had the opportunity to respond orally and in writing and to present rebuttal affidavits. The Court has further elaborated on a pre-deprivation hearing, holding that the essential requirements of due process are notice and an opportunity to respond. *See Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495. "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.*

The Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), set forth three factors by which to judge the sufficiency of an administrative procedure:

(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

Plaintiff's interest in continued participation in the FSP must be "placed in perspective and considered in light of the third factor—the government's interest in administering the program for the primary beneficiaries." *Ibrahim*, 650 F.Supp. at 167. Though Plaintiff's private interest is strong, "the government's interest in reducing food stamp abuse through rapid implementation of disqualification decisions is stronger." *Food City*, 917 F.Supp. at 367 (citing *Ibrahim*, 650 F.Supp. at 167).

---

**3.** While the court in *Ilaian v. United States Dep't of Agriculture*, 87 F.Supp.2d 1047 (S.D.Calif.2000), denied a stay pending judicial review pursuant to this statute, it did not undertake a constitutional analysis.

Moreover, stores are only "incidental beneficiaries" of the FSP. *Ibrahim*, 650 F.Supp. at 167. The legislative history of the Welfare Reform Act clearly reveals Congress' intent to curb the enormous losses caused by food stamp fraud each year.

In addition, the risk of erroneous deprivation is slight, because Plaintiff received notice of the charges and had the opportunity to respond and to appeal to a review officer; that appeal is pending. *See Food City*, 917 F.Supp. at 367. In the context of employee termination, the Supreme Court noted that requiring more would "intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 470 U .S. at 546, 105 S.Ct. at 1495. Requiring more than the FSP regulations require would likewise intrude unnecessarily on the government's interest in preventing substantial losses to the program. In addition, Plaintiff had the opportunity to seek, and has sought, a trial *de novo*. Courts have previously held that an evidentiary hearing is not required before permanent disqualification from the FSP where the retailer was so notified and given the chance to respond. *See Turnage v. United States*, 639 F.Supp. 228, 234 (E.D.N.C.1986) (finding that "[t]he prescribed procedures provided the plaintiff with an effective process for asserting his claim prior to the administrative action"); *Amer*, 948 F.Supp. at 509.

Finally, the government's interest is not only the function involved but the financial and administrative burdens that a stay would entail. "Although financial cost alone is not controlling, the government's interest and hence that of the public, in conserving fiscal and administrative resources is a factor that must be weighed." *Turnage*, 639 F.Supp. at 234 (citing *Mathews*, 424 U.S. at 348, 96 S.Ct. at 909). In *Turnage*, the court noted that the costs associated with having an evidentiary hearing prior to disqualification from the program, in addition to providing for a trial *de novo*, would be significant on both the government and society. *See* 639 F.Supp. at 234. Given the losses suffered each year due to food stamp fraud, the opportunity for continued violations and further loss to the government provided by a stay of permanent disqualification supports the conclusion that the procedures provided prior to the effective date of the sanction satisfy due process.

## III. CONCLUSION

Plaintiff is not entitled to stay of permanent disqualification under the statute and its implementing regulations. Furthermore, even if the court applied the test for a stay, Plaintiff has failed to show a likelihood of success on the merits for the reasons stated herein. Therefore,

IT IS ORDERED that Plaintiff's motion for a temporary restraining order and preliminary injunction is denied [1].