**SKYSON USA, LLC, Plaintiff,**

v.

**UNITED STATES of America; United States Department of Agriculture, Food and Nutrition Service; Doe Defendants 1–10, Defendants.**

**Civil No. 09–00278 JMS/BMK.**

United States District Court,
D. Hawai'i.

Aug. 20, 2009.

---

Allison A. Ito, Chuck C. Choi, Neil J. Verbrugge, Wagner Choi & Verbrugge, Honolulu, HI, for Plaintiff.

Harry Yee, Office of the United States Attorney, Honolulu, HI, for Defendants.

## ORDER DENYING PLAINTIFF SKYSON USA, LLC'S MOTION FOR PRELIMINARY INJUNCTION

J. MICHAEL SEABRIGHT, District Judge.

### I. INTRODUCTION

On June 17, 2009, Plaintiff Skyson USA, LLC ("Plaintiff"), a grocery store in Kalihi, filed this action seeking judicial review of an administrative action by Defendant United States, acting through the United States Department of Agriculture, Food and Nutrition ("Defendant" or "USDA"), which found that Plaintiff had trafficked in food stamps. As a result of this determination, Defendant permanently disqualified Plaintiff from participating in the Supplemental Nutrition Assistance Program (the "SNAP"), and now Plaintiff may no

longer accept food stamp benefits from its customers.

Currently before the court is Plaintiff's Motion for Preliminary Injunction, in which Plaintiff requests the court to stay this administrative decision pending disposition of Plaintiff's appeal pursuant to 7 U.S.C. § 2023(a)(17). In other words, Plaintiff requests the court to issue a preliminary injunction allowing it to participate in the SNAP pending its appeal. Based on the following, the court DENIES Plaintiff's Motion for Preliminary Injunction.

## II. *BACKGROUND*

### A. The Food Stamp Act

The SNAP and its predecessor, the Food Stamp Program, were created pursuant to the Food Stamp Act, 7 U.S.C. § 2011 et seq. The express purpose of the Food Stamp Act is to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households" by increasing their ability to purchase food. 7 U.S.C. § 2011. The Food Stamp Act provides that eligible low-income households may use coupons "to purchase food from retail food stores which have been approved for participation in the [SNAP]." 7 U.S.C. § 2013(a).

Only approved stores may accept food stamps in exchange for eligible food items. 7 U.S.C. § 2018. Stores that violate the Food Stamp Act or its regulations face substantial sanctions including civil penalties, specific periods of disqualification, and even permanent disqualification. For example, a store that "traffics" in food stamps—*i.e.,* buys or sells "coupons . . . or other benefit instruments for cash or consideration other than eligible food," 7 C.F.R. § 271.2—will be permanently disqualified from participating in the program. *See* 7 U.S.C. § 2021(b)(3)(B).

The Food Stamp Act and its implementing regulations outline the procedure for determining violations and sanctions. First, the store must be given notice of the administrative action and may file a request to submit information in support of its position. 7 U.S.C. § 2023(a)(1–3); *see also* 7 C.F.R. § 278.6(b). Next, the USDA determines whether a violation has occurred and issues a final decision. 7 U.S.C. § 2023(a)(4–5); *see also* 7 C.F.R. § 278.6(c-d). If a retailer is permanently disqualified from the SNAP due to trafficking, such disqualification becomes effective upon notice. 7 U.S.C. § 2023(a)(18). All other sanctions, however, take effect thirty days after delivery of the final notice. *Id.* § 2023(a)(5).

"If the store . . . is aggrieved by such final decision, it may obtain judicial review thereof by filing a complaint" in federal district court, 7 U.S.C. § 2023(a)(13); and the court's review is de novo. 7 U.S.C. § 2023(a)(15). The Food Stamp Act also provides that a retailer may seek preliminary injunctive relief. Specifically, 7 U.S.C. § 2023(a)(17) provides:

> During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal.

The very next subsection, however, provides:

> **(18) Suspension of stores pending review**
> Notwithstanding any other provision of this subsection, any permanent disqualification of a retail food store or wholesale food concern under paragraph (3) or (4) of section 2021(b) of this title shall be

effective from the date of receipt of the notice of disqualification. If the disqualification is reversed through administrative or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period.

7 U.S.C. § 2023(a)(18).

The USDA has construed the statute as preventing permanently disqualified retailers from seeking preliminary relief through its promulgation of 7 C.F.R. § 279.7(d), which provides:

> During the pendency of any judicial review, or any appeal therefrom, the administrative action under review shall remain in force unless the firm makes a timely application to the court and after hearing thereon, the court stays the administrative action after a showing that irreparable injury will occur absent a stay and that the firm is likely to prevail on the merits of the case. However, *permanent disqualification actions ... shall not be subject to such a stay of administrative action.* If the disqualification action is reversed through administrative or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period.

(emphasis added).

## B. Procedural History

Pursuant to the procedures outlined in the Food Stamp Act, on February 26, 2009, the USDA charged Plaintiff with trafficking in food stamps and notified Plaintiff that if this charge is proven, Plaintiff may be permanently disqualified from the SNAP. Compl. Ex. 6. As alleged in the Complaint, Plaintiff did not see this February 26 letter and therefore did not respond. Compl. ¶ 28. Accordingly, on March 13, 2009, the USDA sent Plaintiff an administrative action letter permanently disqualifying Plaintiff from the SNAP

"effective upon receipt of this letter." Compl. Ex. 7.

Plaintiff was subsequently granted administrative review of the permanent disqualification, and submitted supplemental information in an attempt to prove that it had not trafficked in food stamps. On May 20, 2009, Defendant issued its Final Agency Decision upholding the permanent disqualification of Plaintiff from the SNAP. Compl. Ex. 9. On June 17, 2009, Plaintiff filed its Complaint seeking judicial review of Defendant's decision.

On July 23, 2009, Plaintiff filed a Motion for Temporary Restraining Order or Preliminary Injunction requesting the court to stay this administrative decision pursuant to 7 U.S.C. § 2023(a)(17) pending disposition of Plaintiff's appeal. On July 24, 2009, Defendant filed an Opposition, arguing that 7 U.S.C. § 2023(a)(17) does not apply to retailers who have been permanently disqualified such that Plaintiff may not seek preliminary relief. That same day, the court held a hearing and found that to the extent Plaintiff can seek preliminary relief, 7 U.S.C. § 2023(a)(17) requires the court to provide Defendant at least 10 days notice and a hearing. The court therefore denied Plaintiff's Motion for Temporary Restraining Order, and notified the parties that it would first determine whether § 2023(a)(17) allows Plaintiff to seek preliminary relief before addressing the substance of Plaintiff's Motion for Preliminary Injunction.

Plaintiff filed a memorandum responding to Defendant's arguments on August 4, 2009, and Defendant filed a supplemental memorandum on August 6, 2009. A hearing on this limited statutory issue was held August 13, 2009.

## III. ANALYSIS

The parties present an issue of statutory construction: whether 7 U.S.C.

§ 2023(a)(17) applies to a retailer who has been permanently disqualified from participating in the SNAP such that it may seek preliminary relief from the court. The USDA has answered this question in the negative through 7 C.F.R. § 279.7(d), which provides that "permanent disqualification actions ... shall not be subject to such a stay of administrative action."

Plaintiff argues that nothing in § 2023(a) suggests that a permanently disqualified retailer is prohibited from seeking preliminary relief and that the court should give no deference to 7 C.F.R. § 279.7(d). *See* Pl.'s Br. 9. In comparison, Defendant argues that the plain language of § 2023(a)(18) provides that a retailer who is permanently disqualified for trafficking is not entitled to preliminary relief. *See* Def.'s Br. 4. The court first outlines the two-step framework for reviewing an agency's interpretation of a statute created in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and then applies this framework to determine that § 2023(a)(18) is ambiguous and that the court must give deference to the USDA's interpretation in 7 C.F.R. § 279.7(d) stating that permanently disqualified retailers may not seek preliminary relief.

### A. *Chevron* Framework

Under the *Chevron* framework, the court must first "determine whether 'the intent of Congress is clear.' " *Marmolejo–Campos v. Holder*, 558 F.3d 903, 908 (9th Cir.2009) (quoting *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778). "[I]f the intent of Congress is clear and unambiguously expressed by the statutory language at issue," the court's analysis ends, *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93, 127 S.Ct. 1534, 167 L.Ed.2d 449 (2007), and "both the court and the agency 'must give effect to the unambiguously expressed intent of Congress.' "

*Marmolejo–Campos*, 558 F.3d at 908 (quoting *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778). If, on the other hand, the statute is silent or otherwise ambiguous, the court must determine "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778.

In determining whether Congress has directly spoken to the issue, the court must "employ the traditional tools of statutory construction." *Student Loan Fund of Idaho, Inc. v. U.S. Dep't of Educ.*, 272 F.3d 1155, 1165 (9th Cir.2001). "In construing the provisions of a statute, [the court must] first look to the language of the statute to determine whether it has a plain meaning." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (citing *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir.2008)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

The court's "inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.' " *Id.* at 341, 117 S.Ct. 843; *see also McDonald*, 548 F.3d at 780. "If the proper interpretation is not clear from this textual analysis, the legislative history offers valuable guidance and insight into Congressional intent. However, it is well established that legislative history which does not demonstrate a clear and certain congressional intent cannot form the basis for enjoining regulations." *Student Loan Fund of Idaho, Inc.*, 272 F.3d at 1165. (citation and internal quotation signals omitted).

In step 2 of the *Chevron* analysis, the court need not find that the agency "inter-

pretation is the *only* permissible construction of [the statute] or even the reading [the court] would have reached, but only that [the agency's] interpretation is not arbitrary and capricious." *Natural Res. Def. Council v. E.P.A.*, 526 F.3d 591, 605 (9th Cir.2008) (citing *Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. 2778). To determine if the construction is permissible, the court must " 'look to the plain and sensible meaning of the statute, the statutory provision in the context of the whole statute and case law, and to the legislative purpose and intent.' " *Id.* (quoting *Cuevas-Gaspar v. Gonzales,* 430 F.3d 1013, 1022 (9th Cir.2005)).

## B. Application of Framework

### 1. Chevron *Step 1*

■ In step 1 of the *Chevron* analysis, the court must determine whether Congress clearly spoke on whether all retailers, including those who have been permanently disqualified, are permitted to seek preliminary relief of an adverse administrative decision.

Section 2023(a)(17), standing alone, appears to allow all retailers to seek preliminary relief:

> During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal.

The very next subsection (and last subjection of § 2023(a)), however, provides:

> **(18) Suspension of stores pending review**
>
> Notwithstanding any other provision of this subsection, any permanent disquali-

fication of a retail food store or wholesale food concern under paragraph (3) or (4) of section 2021(b) of this title shall be effective from the date of receipt of the notice of disqualification. If the disqualification is reversed through administrative or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period.

7 U.S.C. § 2023(a)(18).

According to its plain language, § 2023(a)(18) requires that a permanent disqualification must begin on the date of notice to the retailer. What § 2023(a)(18) does not unambiguously articulate, however, is whether it also prevents a permanently disqualified retailer from seeking preliminary relief during an appeal. On the one hand, § 2023(a)(18) mandates that a permanent disqualification "shall" be effective from the date of notice, and the phrase "notwithstanding any other provision of this subsection" certainly may be construed as overriding § 2023(a)(17)'s suggestion that all retailers may seek preliminary relief. On the other hand, this "notwithstanding" phrase may merely refer back to the other provision in this subsection setting timing for other sanctions, § 2023(a)(5), and clarify that § 2023(a)(18) sets a different effective date for permanently disqualified retailers.

The legislative history does not definitively answer which interpretation Congress intended. Rather, the legislative history stresses the need to combat food stamp trafficking and merely echoes the language of § 2023(a)(18) that a disqualification of a retailer for trafficking in food stamps begins upon notice. *See* Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Welfare Reform Act), Pub. L. No. 104–193, House Report 104–725 (July 30, 1996), 1996 U.S.C.C.A.N. at 2201, 2203 ("The committee believes

that where an authorized retail food store or wholesale food concern is permanently disqualified, such disqualification should be effective from the date of receipt of the notice of disqualification pending any administrative or judicial review."). While Congress' emphasis on creating stronger sanctions may support construing § 2023(a)(18) to prevent permanently disqualified retailers from seeking preliminary relief, it falls short of a "clear and certain congressional intent" for such construction. *See Student Loan Fund of Idaho, Inc.*, 272 F.3d at 1165.

Accordingly, it appears that § 2023(a) does not unambiguously answer whether Congress intended that permanently disqualified retailers may seek preliminary relief. Despite this ambiguity in the statute (or, perhaps due to this ambiguity), *both* parties argue that the § 2023(a) is unambiguous yet posit completely different constructions. The court's analysis of the parties' constructions only underscores that different interpretations are possible.

Turning to Defendant's construction, the court recognizes that a natural reading of § 2023(a)(18) suggests that permanently disqualified retailers may not seek preliminary relief because § 2023(a)(18) mandates that a permanent disqualification "shall"— *i.e.*, must—begin on the date the retailer receives notice of the disqualification. *See, e.g., Hewitt v. Helms*, 459 U.S. 460, 471, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (noting that "shall" and "must" are virtually synonymous under traditional principles of statutory construction and are both words of "an unmistakably mandatory character"), *limited on other grounds by Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir.2003) (en banc) ("[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."

(internal quotations omitted)). Further, the last sentence of § 2023(a)(18)—providing that "the Secretary shall not be liable for the value of any sales lost during the disqualification period"—can be construed as not only making clear that the USDA is not liable for any lost sales during the disqualification period, but also confirming that the disqualification continues during any judicial review and/or appeal.

Interpreting § 2023(a)(18) to prevent retailers that have been permanently disqualified from seeking preliminary relief is also supported by its context within § 2023(a). Section 2023(a) outlines the procedure for administrative and judicial review, with § 2023(a)(18) placed as the last, modifying provision. While § 2023(a)(17) on its own would seemingly allow *all* retailers to seek preliminary relief, § 2023(a)(18) applies "notwithstanding"—*i.e.*, "without prevention or obstruction from or by" or "in spite of"—any other provision in § 2023(a). *See Salmo v. U.S. Dep't of Agric.*, 226 F.Supp.2d 1234, 1237 (S.D.Cal.2002) (defining "notwithstanding" according to its common usage as found in Webster's Third New International Dictionary Unabridged (1993)). Stated differently, § 2023(a)(18) can be construed as modifying § 2023(a)(17)'s suggestion that all retailers may seek preliminary relief and instead precluding those that have been permanently disqualified from the SNAP. *See also Ameira Corp. v. Veneman*, 169 F.Supp.2d 432, 437–37 (M.D.N.C.2001) (finding that the statute and regulation prevent the plaintiff from seeking preliminary relief); *Ilaian v. U.S. Dep't of Agric.*, 87 F.Supp.2d 1047, 1048 (S.D.Cal.2000) (finding that the plain meaning of § 2023(a)(18) "reflects that a stay is not available in cases of permanent disqualification for trafficking" and that the regulation supports this plain meaning).

Despite this reasonable construction, Plaintiff's construction of § 2023(a), while less persuasive, is nonetheless plausible. Specifically, Plaintiff argues that the court should adopt the reasoning in *Lazaro v. U.S. Department of Agriculture*, 186 F.Supp.2d 1203 (M.D.Fla.2001), which found that § 2023(a) unambiguously allows all retailers to seek preliminary relief. *Lazaro* based its construction on § 2023(a)(17), which *Lazaro* characterized as granting the court authority to (1) review a USDA decision de novo,[1] and (2) stay that decision in extraordinary circumstances. *Id.* at 1209–10. Given this broad authority, *Lazaro* construed § 2023(a)(18) as merely setting forth an effective date for when the permanent disqualification begins, as opposed to limiting this broad grant of authority. *Id.* at 1210.

*Lazaro* reasoned that § 2023(a)(18) must be construed as setting forth the effective date only because § 2023(a)(5), which governs the effective date of sanctions lesser than a permanent disqualification, uses similar language. According to *Lazaro*, to read § 2023(a)(18) as precluding permanently disqualified retailers from seeking preliminary relief would mean that § 2023(a)(5) also prevents retailers from seeking preliminary relief. Such result, however, would render § 2023(a)(17) useless because no retailer could seek preliminary relief under such construction. *Id.* at 1210–11.

While *Lazaro* presents one possible construction of § 2023(a), its reasoning does not convince the court that it is the *only* possible construction, much less the best construction. *Lazaro's* construction appears to lessen the impact of § 2023(a)(18)'s language that *"notwithstanding any other provision of this subsection,"* a retailer found trafficking in food stamps is disqualified upon notice.

*See* 7 U.S.C. § 2023(a)(18) (emphasis added); *see, e.g., E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 766 (9th Cir.2003) ("We must give meaning to all words in the statute, not just the ones that support our chosen result."). A fairer reading of this "notwithstanding" clause is that it modifies whatever the previous subsections in § 2023(a) may have otherwise provided and also differentiates § 2023(a)(18) from § 2023(a)(5), which does not include this phrase. Nonetheless, the court recognizes that *Lazaro* presents a plausible, alternative construction of § 2023(a) and that § 2023(a)(18) does not unambiguously state that a permanently disqualified retailer may not seek preliminary relief.

In sum, the court concludes that § 2023(a) does not clearly answer whether a permanently disqualified retailer may seek preliminary relief. The court therefore proceeds to step two of the *Chevron* analysis.

### 2. Chevron *Step 2*

■ Because the court finds that § 2023(a) does not unambiguously answer whether a permanently disqualified retailer may seek preliminary relief, the court next determines whether 7 C.F.R. § 279.7(d) proffers a permissible interpretation. This regulation interprets § 2023(a)(18) to mean that "permanent disqualification actions ... shall not be subject to such a stay of administrative action." As described above, the court finds that this interpretation of § 2023(a)(18) is not only permissible but also inherently reasonable given the context of the statute. The court therefore concludes that 7 C.F.R. § 279.7(d) is not an arbitrary or capricious construction of

---

**1.** Contrary to *Lazaro's* explanation, it is 7 U.S.C. § 2023(a)(15), not § 2023(a)(17), which states that the court's review is de novo.

§ 2023(a) and that as a result, Plaintiff may not seek preliminary relief.

## IV. CONCLUSION

Based on the above, the court DENIES Plaintiff's Motion for Preliminary Injunction.

IT IS SO ORDERED.